J. GARFIELD WALL v. CHARLES W. STOUT AND BETSY W. SANDERS, GUARDIAN AD LITEM FOR MARIE L. WALL v. C. W. STOUT

No. 247PA83

(Filed 2 February 1984)

1. **Appeal and Error § 31.1— objections to jury instructions in charge conference—no necessity to repeat objections after jury instructions**

    Where, at the conclusion of all the evidence, the trial judge held a charge conference at which counsel for plaintiffs objected to the giving of certain instructions, neither App. R. 10(b)(2) nor Rule 21 of the General Rules of Practice for the Superior and District Courts required plaintiffs to repeat their objections to the jury instructions after the charge was given in order to preserve the objections for appellate review.

2. **Physicians, Surgeons, and Allied Professions § 20.2— medical negligence action—jury instructions, as a whole, improper**

    In a medical negligence action, the jury instructions, when considered as a whole, tended to exculpate defendant doctor by unduly emphasizing the limitations upon his liability for medical negligence.

3. **Physicians, Surgeons, and Allied Professions § 11.1— scope of a physician's duty to his patient**

    The applicable standard of care which determines the scope of a physician's duty to his patient combines in one test the exercise of "best judgment," "reasonable care and diligence" and compliance with the "standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities," the standard of G.S. 90-21.12.

**4. Physicians, Surgeons, and Allied Professions § 20.2— instructions—use of term "honest error" inappropriate**

Because of the potentially misleading and exculpatory import of the term, the phrase "honest error" is inappropriate in an instruction on the liability of a doctor for medical malpractice and should not hereafter be given.

**5. Physicians, Surgeons, and Allied Professions § 20.2— instructions in medical malpractice action**

In a medical malpractice action, there was no error in the instructions given by the trial judge to the effect that the law does not hold a physician to a standard of infallibility nor require a degree of skill known only to a few in his profession.

**6. Physicians, Surgeons, and Allied Professions § 20.2— error to instruct on standard of care required of general practitioners and specialists**

In a medical malpractice action, the trial judge erred in instructing the jury concerning the standard of care required of general practitioners as well as the standard required of specialists since the charge on the standard of care for a general practitioner was not relevant to the issues presented, where the entire case dealt with the care required of a specialist in family practice such as defendant.

**7. Physicians, Surgeons, and Allied Professions § 20.2— instructions—physician not an "insurer" instruction not supported by evidence**

An instruction to the effect that a physician is "not an insurer of results" should not have been given since no issue concerning a guarantee was raised.

**8. Physicians, Surgeons, and Allied Professions § 20.2— redundancy in instructions—overemphasizing plaintiffs' burden of proof**

In a medical malpractice action, the instructions made it appear as though plaintiff had to prove four separate elements in order to recover, when in reality all the plaintiff must prove, after establishing the same or similar community standard, is that the doctor failed to comply with this standard and that this failure proximately caused the plaintiff's injury. Additionally, the trial judge in this case instructed the jury on three different occasions that negligence cannot be presumed from the mere fact of injury. The instructions should be given so that each element of the plaintiff's burden of proof is accurately and distinctly described to the jury only once in the trial court's review of the plaintiff's burden in a malpractice case.

**9. Physicians, Surgeons, and Allied Professions § 20.2— malpractice instructions—failure to insert "probably" into instructions defining proximate cause—no error**

In a medical malpractice action the trial court did not err by failing to insert the word "probably" into the pattern jury instruction defining proximate cause so that the instruction would read "proximate cause is a real cause, a cause without which the claimed injury probably would not have occurred . . . ." Failure to do so did not place an erroneous burden on plaintiffs to prove their case to a moral certainty.

**10. Husband and Wife § 9— action for loss of consortium—date when action accrued**

Plaintiff husband's cause of action for loss of consortium did not accrue until the date of the filing of the opinion in *Nicholson v. Hospital*, 300 N.C. 295 (1980), which case restored the cause of action for loss of consortium due to the negligence of third parties to both spouses. Therefore, plaintiff husband's cause of action for loss of consortium which was filed in 1981 was within the 3-year statute of limitations even though defendant's allegedly negligent acts occurred on 3 September 1977. G.S. 1-52(5).

ON discretionary review, pursuant to G.S. 7A-31, from a decision of the Court of Appeals, 61 N.C. App. 576, 301 S.E. 2d 467 (1983), affirming judgment entered by *Hobgood, Judge*, at the 19 October 1981 Special Session of GRANVILLE County Superior Court.

On 15 November 1983, plaintiff Betsy W. Sanders, guardian ad litem for Marie Wall, filed this civil action alleging medical malpractice on the part of Dr. Charles W. Stout, a family medicine physician practicing in Asheboro, North Carolina. Plaintiff J. Garfield Wall, husband of Marie Wall, filed an action seeking damages for loss of consortium on 27 February 1981. The two actions were consolidated for trial by order dated 23 September 1981.

At the conclusion of all the evidence presented at trial, the following issues were submitted to and answered by the jury:

1. Was the plaintiff, Marie L. Wall, injured by the negligence of the defendant, Dr. C. W. Stout?

ANSWER: No.

2. What amount, if any, is the plaintiff, Marie L. Wall, entitled to recover from the defendant, Dr. C. W. Stout?

ANSWER: _____

1. Did the defendant's negligence proximately cause the plaintiff, J. Garfield Wall, to lose the consortium of his wife, Marie L. Wall?

ANSWER: No.

2. What amount, if any, is the plaintiff, J. Garfield Wall, entitled to recover for loss of consortium?

ANSWER: \_\_\_\_

From a judgment entered on the verdict, plaintiffs appealed to the Court of Appeals.

In a unanimous decision, the Court of Appeals found no error in the trial. In reaching this conclusion, the court first held that plaintiffs' exceptions 3-5 and 8-11 did not comply with Rule 10(b)(2) of the North Carolina Rules of Appellate Procedure and that exception 2 did not comply with Rule 21 of the General Rules of Practice for the Superior and District Courts. The court further held that the jury instructions objected to by exceptions 12-15 relating to the required standards of skill and general liability of a medical doctor for negligence were "legally correct" and "directly relevant to the medical standard of practice in issue at trial." 61 N.C. App. at 578, 301 S.E. 2d at 469.

On 9 August 1983, we allowed plaintiffs' petition for discretionary review.

*McCain & Essen, by Grover C. McCain, Jr., and Jeff Erick Essen and Watkins, Finch & Hopper, by William L. Hopper, for plaintiff appellants.*

*Amicus Curiae, North Carolina Academy of Trial Lawyers, McLeod & Senter, by Joe McLeod and William L. Senter.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by James D. Blount, Jr., Nigle B. Barrow, Jr. and Susan M. Parker for defendant appellee.*

BRANCH, Chief Justice.

[1] Before considering the merits of plaintiffs' appeal, we first address defendant's contention that plaintiffs' exceptions 2 and 12-15 have not been properly preserved for appellate review. Defendant argues that plaintiffs violated Rule 10(b)(2) of the North Carolina Rules of Appellate Procedure and Rule 21 of the General Rules of Practice for the Superior and District Courts by failing to object to the jury charge at the conclusion of the charge and before the jury began its deliberations.

Rule 10(b)(2) provides, in part, as follows:

No party may assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly that to which he objects and the grounds of his objection; . . . .

Similarly, Rule 21 of the General Rules of Practice for the Superior and District Courts provides, in pertinent part, that

[a]t the conclusion of the charge and before the jury begins its deliberations, and out of the hearing, or upon request, out of the presence of the jury, counsel shall be given the opportunity to object on the record to any portion of the charge, or omission therefrom, stating distinctly that to which he objects and the grounds of his objection.

At the conclusion of all the evidence in the instant case, the trial judge held a charge conference at which time he went through the pattern jury instructions and indicated those which he intended to include in his charge to the jury. Counsel for plaintiffs objected to the giving of the medical malpractice pattern jury instructions concerning "infallibility" and "utmost degree of skill and learning" (exception 12), that a health care provider is not an insurer of results (exceptions 13 and 14), and that a doctor is not responsible for a mistake in judgment if it is the result of an "honest error" (exception 15). These objections are reflected in the trial transcript. Additionally, prior to the jury charge, plaintiffs' counsel requested that the word "probably" be inserted in the court's explanation of proximate cause. The record reflects that this change was requested both orally and in writing.

The trial judge overruled each of plaintiffs' objections to the pattern jury instructions and instructed in accordance with his intentions as previously stated at the charge conference. Counsel for plaintiffs made no additional objections following the charge to the jury.

It is our conclusion that neither Rule 10(b)(2) nor Rule 21 required plaintiffs to repeat their objections to the jury instructions after the charge was given in order to preserve their objections for appellate review. These rules were obviously designed to prevent unnecessary new trials caused by errors in instructions that

the court could have corrected if brought to its attention at the proper time. It is our opinion that this policy is met when a request to alter an instruction has been submitted and the trial judge has considered and refused the request. In most instances, it is obvious that further objection at the close of the instructions would be unavailing.

Rule 51 of the Federal Rules of Civil Procedure contains language almost identical to our Rule 10(b)(2). Under Rule 51, "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, . . . ."

The Ninth Circuit Court of Appeals interpreted Rule 51 to permit appellate review of a jury instruction, even though no exception was entered after the charge had been given, when " 'the court [had] been fully informed in advance of the charge as to appellants' contention and it was clear that further efforts to persuade the court would have been unavailing.' [citations omitted] . . . Restating the identical point as an exception to the instruction would have been useless." *Robinson v. Heilman,* 563 F. 2d 1304, 1306 (9th Cir. 1977), *quoting, Cohen v. Franchard,* 478 F. 2d 115, 122 (2d Cir. 1973). *See also, Brown v. Avemco Investment Corp.,* 603 F. 2d 1367, 1371 (9th Cir. 1979) (to require plaintiffs to object after instructions is to require a "pointless formality"); *Stewart v. Ford Motor Co.,* 553 F. 2d 130, 140 (D.C. Cir. 1977) (to require additional objection after instructions given would be "an unnecessary elevation of form over substance").

On the basis of the record in this case, it appears plain that the trial judge's refusal at the charge conference to instruct in accordance with plaintiffs' proposals represented the judge's final decision and further objections would have been not only useless but wasteful of the court's time. As such, we hold that plaintiffs' failure to object following the giving of the jury instructions does not foreclose review by this Court of plaintiffs' exceptions 2 and 12-15.

Defendant also argues that plaintiffs' appeal should be dismissed for their failure to clearly reference the portions of the jury instructions complained of as required by Rule 10(b)(2). This Rule requires that "[i]n the record on appeal an exception to instructions given the jury shall identify the portion in question by

Wall v. Stout

setting it within brackets or by any other clear means of reference."

We agree with defendant that the portions of the instructions excepted to by plaintiffs have not been clearly defined. The only indication of the challenged portions consists of handwritten notes which appear in the transcript between lines of type or at the end of lengthy paragraphs. It is never entirely clear whether plaintiffs except to a particular paragraph, to preceding paragraphs or only to particular sentences or phrases. Despite this handicap, we are enabled by the arguments presented in plaintiffs' brief to ascertain the particular portions complained of and we elect in our discretion to consider the merits of plaintiffs' contentions pursuant to Rule 2 of the Rules of Appellate Procedure.

[2] Each of plaintiffs' arguments on appeal relates to the jury instructions given in the instant case. Plaintiffs concede that the instructions given were in conformity with the North Carolina pattern jury instructions relating to medical negligence. It is their contention, however, that the incorporation of exculpatory legal maxims inapplicable to the factual situation presented, the unnecessary repetition of instructions favorable to defendant and the recitation of confusing statements relating to plaintiffs' burden of proof under G.S. 90-21.12 resulted in a charge that was emphatically favorable to defendant. Plaintiffs contend that these "unduly exculpatory instructions" constitute reversible error entitling them to a new trial.

We have examined each of plaintiffs' arguments respecting particular portions of the jury instructions to determine whether, when considered as a whole, the instructions tended to exculpate defendant by unduly emphasizing the limitations upon his liability for medical negligence. We conclude that although many of the instructions when considered in isolation were either correct or, if erroneous, were not sufficiently prejudicial to constitute reversible error, that the instructions in their totality were so emphatically favorable to defendant that plaintiffs are entitled to a new trial. In reaching this conclusion, we intend no especial criticism of the able trial judge, for the charge given, considered in its separate parts, was nearly in precise conformity with the pattern jury instructions and our prior case law. Our decision in this case is directed equally to the exculpatory nature of the pat-

tern jury instructions themselves and to their selections and use by the trial judge.

[3] Plaintiffs first argue that the trial judge erred in instructing that a doctor is not responsible for a mistake in his diagnosis or judgment if it is the result of an "honest error." Plaintiffs contend that the term "honest error" is misleading and unduly exculpatory and that it is irrelevant to the statutory definition of medical negligence.

General Statute 90-21.12 establishes a standard of care applicable to all health care professionals. This statute provides:

> In any action for damages for personal injury or death arising out of the furnishing or the failure to furnish professional services in the performance of medical, dental, or other health care, the defendant shall not be liable for the payment of damages unless the trier of the facts is satisfied by the greater weight of the evidence that the care of such health care provider was not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action.

It is plaintiffs' position that the common law standards of care enunciated in our prior cases are no longer relevant in a medical malpractice action. They argue that all other standards and requirements defining a physician's duty to a patient, such as the limitation of liability for an "honest error," are subsumed in this single statutory standard.

Defendant strenuously disagrees with plaintiffs' position that by adopting the statutory standard of care, the legislature intended to supplant established case law standards of care to which the "honest error" language relates. Defendant argues that the passage of G.S. 90-21.12 was merely intended to codify the "same or similar communities" standard of care previously adopted by this Court in *Wiggins v. Piver*, 276 N.C. 134, 171 S.E. 2d 393 (1970). This view is supported by case law of the Court of Appeals and by legal commentators. *See Thompson v. Lockert*, 34 N.C. App. 1, 5, 237 S.E. 2d 259, 261, *cert. denied*, 293 N.C. 593, 239 S.E. 2d 264 (1977) (standard of care developed by case law now adopted by

the legislature); Comment, Statutory Standard of Care for North Carolina Health Care Providers, 1 Campbell L. Rev. 111, 113 (1981) ("[The statutory standard] does not appear to materially alter the existing common law standard, which has existed for approximately seventy years.") *See also*, North Carolina Professional Liability Insurance Study Commission Report, p ii (1976).

We agree with the above-cited authorities that the adoption of the statute was not intended to accomplish the radical result contended by plaintiff. We simply cannot conceive that by passing this legislation, the General Assembly intended to eliminate the previously existing common law obligations of a physician to his patient. We therefore conclude that the intended purpose of G.S. 90-21.12 was merely to conform the statute more closely to the existing case law applying a "same or similar community" standard of care.

Considering the statute's limited purpose, we further disagree with plaintiffs that it would be sufficient to instruct the jury that the sole issue relating to a physician's alleged negligence is whether he complied with this statutory standard of care. Our case law makes clear that this is not the extent of the physician's duty to his patient.

The scope of a physician's duty to his patient has been variously described by this Court, but perhaps most succinctly by Justice Higgins in *Hunt v. Bradshaw*, 242 N.C. 517, 88 S.E. 2d 762 (1955).

> A physician or surgeon who undertakes to render professional services must meet these requirements: (1) He must possess the degree of professional learning, skill and ability which others similarly situated ordinarily possess;[1] (2) he must exercise reasonable care and diligence in the application of his knowledge and skill to the patient's case; and (3) he must use his best judgment in the treatment and care of his

---

1. This requirement is, of course, further refined by language in our later cases defining the "same or similar communities" standard and by G.S. 90-21.12. The physician is now required to provide care "in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action."

patient. [Citations omitted.] If the physician or surgeon lives up to the foregoing requirements he is not civilly liable for the consequences. If he fails in any one particular, and such failure is the proximate cause of injury or damage, he is liable.

*Id.* at 521-22, 88 S.E. 2d at 765.

The applicable standard, then, is completely unitary in nature, combining in *one test* the exercise of "best judgment," "reasonable care and diligence" *and* compliance with the "standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities."

[4] Having determined that G.S. 90-21.12 did not abrogate the common law standards of care required of a physician and that an instruction combining elements of both the statute and phraseology from our earlier cases is necessary to fully explain the doctor's duty, we next consider whether the use of the term "honest error" is unduly exculpatory and misleading.

In *Teh Len Chu v. Fairfax Emergency Medical Associates,* 223 Va. 383, 290 S.E. 2d 820 (1982), the Virginia Supreme Court expressly disapproved of an instruction in a medical malpractice case that a doctor "is not liable for damages resulting from his *honest mistake* or a *bona fide* error in judgment." (Emphasis added.) The Virginia court concluded that

terms such as "honest mistake" and "bona fide" error have no place in jury instructions dealing with negligence in medical malpractice cases. The terms not only defy rational definition but also tend to muddle the jury's understanding of the burden imposed upon a plaintiff in a malpractice action. If use of the terms were permitted, it would be appropriate to ask: Must a plaintiff prove a "dishonest mistake" or a "bad faith error" in order to recover? The obvious negative answer reveals the vice in the use of the terms.

*Id.* at 386, 290 S.E. 2d at 822.

We find this reasoning persuasive. An instruction using the term "honest error" could easily be interpreted by the jury to mean that a physician could not be liable for negligence unless he

Wall v. Stout

was somehow dishonest, particularly when the term is not defined with reference to the physician's other obligations to the patient. We therefore hold that because of the potentially misleading and exculpatory import of the term, the phrase "honest error" is inappropriate in an instruction on the liability of a doctor for medical malpractice and should not hereafter be given. Language in our prior cases which may have sanctioned the use of this term in defining a physician's liability for medical negligence is hereby expressly disapproved.

We hasten to note that in our view, the jury can be properly instructed without the use of the term "honest error." The trial judge correctly instructed in this case that Dr. Stout

must render the health care service in accordance with the standards of practice exercised by like specialists with similar training and experience who are situated in the same or similar communities at the time the health care service was rendered; that is, in 1977, September.

Now, I instruct you further that it is the duty of the defendant, Dr. Stout, to exercise reasonable and ordinary care and diligence in the use of his skill and in the application of his knowledge to the plaintiff's condition and to exert his best judgment in the treatment and care of the plaintiff.

This was a complete and accurate summation of the defendant physician's responsibilities to plaintiff, incorporating the language earlier quoted with approval from *Hunt v. Bradshaw, supra.* The further instruction that a doctor is not responsible for a mistake in his judgment if, *inter alia,* "the mistake . . . is the result of an honest error," was unnecessary and added nothing to the correct and comprehensive charge earlier given.

[5] Plaintiffs next assign as error the following instruction relating to the applicable standard of care and degree of skill required of defendant.

[T]he law does not require of the defendant absolute accuracy, either in his practice or in his judgment. It does not hold him to the standard of *infallibility* nor does it require of him the *utmost degree of skill and learning known only to a few in his profession* but only that degree of knowledge and

skill ordinarily possessed by members of the profession similarly situated and in like situations.

(Emphasis added.)

Plaintiffs contend that the italicized portions of the instruction intimated favoritism to defendant and tended to exculpate him unnecessarily. We do not agree.

The challenged instruction is a clear and correct statement of North Carolina law. The phraseology used by Judge Hobgood to describe the physician's standard of care is derived precisely from case law long established in this jurisdiction.

> But the law does not require of a physician or surgeon absolute accuracy, either in his practice or in his judgment. It does not hold him to a standard of infallibility, nor does it require of him that utmost degree of skill and learning known only to a few in the profession.

*Nash v. Royster*, 189 N.C. 408, 414, 127 S.E. 356, 359-60 (1925). Furthermore, the standard of care which the jury was here instructed to apply conforms to the standard recognized by the legal commentators. *See* W. Prosser, *Law of Torts*, § 32 (4th ed. 1971) (physician "must have the skill and learning commonly possessed by members of the profession"); Restatement (Second) of Torts § 299A and Commentary at 74-75 (1963) (standard of care "not that of the most highly skilled").

We find no error in the instructions given by the trial judge to the effect that the law does not hold a physician to a standard of infallibility nor require a degree of skill known only to a few in his profession.

[6] We next consider plaintiffs' contention that the trial judge erred in including in the instructions a charge on the standard of care for a general practitioner.

All of the evidence indicated that Dr. Stout held himself out to be a board-certified specialist in family practice. North Carolina case law clearly holds that when a physician holds himself out as a specialist, he is required to bring to the care of his patients more than the average degree of skill possessed by general prac-

titioners. *Koury v. Follo*, 272 N.C. 366, 158 S.E. 2d 548 (1968); *Belk v. Schweizer*, 268 N.C. 50, 149 S.E. 2d 565 (1966).

We recognize that in addition to the instruction regarding the standard of care required of general practitioners, the trial court further instructed as to the standard required of specialists. We agree with plaintiffs, however, that both charges should not have been given. The charge on the standard of care for a general practitioner was not relevant to the issues presented, for the entire case dealt with the care required of a specialist in family practice such as Dr. Stout. Including both charges in a case where clearly only the standard as to specialists is involved is potentially confusing and misleading to the jury. We therefore hold that in this case, the instruction concerning the standard of care required of a general practitioner was erroneously included in the jury charge.

[7] Plaintiffs' next assignment of error similarly includes an attack upon instructions included in the trial court's charge to the jury that were not supported by the evidence. Plaintiffs here object to a series of instructions in which the trial judge stated that a physician is not an "insurer" of his diagnosis, judgment, analysis or treatment.

The court first instructed that "[a] doctor does not ordinarily ensure the success of his medical treatment; that would be in the absence of a guaranteed situation which we do not have before you for consideration." The trial judge then further instructed that "[a] doctor does not guarantee, warrant or assure a particular result or even that the patient will be in as good a condition after the medical services rendered as she was prior thereto." Finally, the court reiterated this instruction on guarantee a third time in the context of diagnosis and judgment: "Also, a medical doctor does not ordinarily guarantee or ensure the correctness of his diagnosis and judgment as to the patient's condition."

Plaintiffs argue that the facts of the case did not give rise to an issue concerning the guarantee of results or diagnosis and therefore these instructions should not have been given. The trial judge himself recognized that no issue of guarantee was present in the case.

We agree with plaintiffs that an instruction to the effect that a physician is "not an insurer of results" should not be given when no issue concerning a guarantee has been raised. The proposition explained by this instruction interjected unnecessary considerations that were not germane to determination of the issues in this case. The error was here compounded because an instruction concerning guarantee was repeated *three times*. Thus, the jury was repeatedly informed of a legal principle exculpatory to defendant that was inapplicable to the facts presented.

We quote from the case of *Spadaccini v. Dolan*, 63 A.D. 2d 110, 407 N.Y.S. 2d 840 (N.Y. App. Div. 1978), to emphasize our position on this point:

> With few exceptions, it cannot be said that any particular legal standard must be charged in every conceivable case. If the facts do not require a particular instruction a Trial Justice should not give it. Merely because a particular instruction is generally given in a particular type of case and is included in the standard PJI instruction and comes from a leading case does not require it in every case of that genre. The Court's instruction on the law is, rather, to be molded by the applicable facts.

*Id.* at 119, 407 N.Y.S. 2d at 845.

We further direct attention to the introductory comments to the North Carolina Pattern Jury Instructions which state that "[t]hese instructions do not eliminate the need to individually tailor each charge to the given factual situation and to comply with Rule 51(a) of the North Carolina Rules of Civil Procedure."

We hold that the series of instructions concerning the guarantee of diagnosis or results by a physician were unnecessary to decision in this case and should not have been given.

[8] In further support of their position that the instructions in the instant case were misleading and unnecessarily exculpatory to defendant, plaintiffs contend that the trial court failed to clearly explain their burden of proof under G.S. 90-21.12 and that the charge unduly emphasized the legal principle that negligence cannot be presumed from the mere fact of injury.

These arguments have not been properly preserved for appellate review because the portions of the instructions here complained of were not excepted to at trial. We nevertheless elect to consider them because when these challenged instructions are viewed in conjunction with those previously discussed, they further evidence a charge that tended to overemphasize the limitations upon defendant's liability.

The trial court instructed the jury on the issue of defendant's negligence as follows:

To prevail on this issue the plaintiff must prove by the greater weight of the evidence the following four things: First, the plaintiff must prove that the defendant, in providing care as the personal family care doctor, failed to provide the standard of medical care services to the plaintiff as required by the standards of practice for family care doctors in the same or similar communities as Asheboro;

Second, the plaintiff must prove that (sic) the standards of practice were among other family care doctors with similar training and experience and who were situate in the same or similar communities at the time the defendant provided medical treatment to the plaintiff in September of 1977.

You must determine the standards of practice applicable, that is, the standards of practice were among the other family practice doctors with similar training and experience who were situate in the same or similar communities at the time the defendant rendered such medical treatment to the plaintiff in September of 1977.

On the question of what standards of practice apply to what the defendant did, only witnesses who purport to have knowledge of those standards of practice are permitted by law to testify as to the applicable standards of practice. Therefore, in determining the standards of practice applicable in this case, you must weigh and consider the testimony of these doctor witnesses rather than your own ideas and standards.

Third, the plaintiff must prove that the defendant did not act in accordance with such standards of practice when

he rendered medical treatment to the plaintiff in September of 1977.

In other words, you must find that other family practice doctors with similar training and experience and who were situated in the same or similar communities would not have done what the defendant did at the time the defendant did it.

Fourth, the plaintiff must prove that she was injured and that the defendant's negligence was a proximate cause as I have previously explained to you of that duty.

This instruction was nearly in exact conformity with the pattern jury instructions on this point.

We agree with plaintiffs that elements one and three as outlined in the pattern jury instructions and as explained by the trial judge are redundant, merely stating in a different manner the doctor's duty to comply with the "same or similar community" standard of care. It thus made it appear as though plaintiff had to prove four separate elements in order to recover, when in reality all the plaintiff must prove, after establishing the same or similar community standard, is that the doctor failed to comply with this standard and that this failure proximately caused the plaintiff's injury.[2]

The confusion inherent in this charge was compounded by a later instruction when the court again reviewed the elements necessary to the proof of plaintiffs' case.

---

2. We wish to emphasize again, however, that compliance with the "same or similar community" standard of care does not necessarily exonerate defendant from liability for medical negligence. The doctor must also use his "best judgment" and must exercise "reasonable care and diligence" in the treatment of his patient. *Hunt v. Bradshaw*, 242 N.C. 517, 521-22, 88 S.E. 2d 762, 765 (1955).

If, however, the plaintiff proves a violation of the statutory standard of care which proximately caused her injury, this is sufficient to establish liability on the part of the attending health care professional for medical negligence. It would similarly be sufficient to establish liability if the plaintiff were able to show that the defendant did not exercise his "best judgment" in the treatment of the patient *or* if the defendant failed to use "reasonable care and diligence" in his efforts to render medical assistance. These three elements here described relate to the doctor's *duty* to his patient, which is not necessarily synonymous with the plaintiff's *burden of proof* in a medical malpractice case. "If [the defendant] fails in any *one* particular [to fulfill his duty to the patient], and such failure is the proximate cause of injury or damage, he is liable." *Id.* at 522, 88 S.E. 2d at 765. (Emphasis added.)

Now, members of the jury, if the plaintiff has proved by the greater weight of the evidence, first, that the defendant, Dr. Stout, was negligent in his medical treatment of Mrs. Wall and second, that other doctors with similar training and experience and who were situate in the same or similar communities at the time the defendant rendered the health care service here in question would have diagnosed and treated Mrs. Wall with a different standard of care and, third, that the defendant was negligent in that he failed to act in accordance with those standards of practice which required him to medically treat the plaintiff different than he treated the plaintiff; and, fourth, that such negligence was a proximate cause of plaintiff's injury, then it would be your duty to answer this issue yes, in favor of the plaintiff.

Again, the pattern jury instructions frame four separate elements comprising plaintiffs' burden of proof. Each of the first three elements are, however, restatements of the same requirement—that plaintiff must show a deviation from the standard of care practiced by those physicians situate in the same or similar communities.

We agree with plaintiffs' contention that these portions of the pattern jury instructions are misleading and tend to overemphasize the plaintiff's burden of proof in a medical malpractice case. The instructions should be given so that each element of the plaintiff's burden of proof is accurately and succinctly described to the jury only once in the trial court's review of the plaintiff's burden in a malpractice case.

Additionally, we note that the trial judge in this case instructed the jury on three different occasions that negligence cannot be presumed from the mere fact of injury. The pattern instruction includes this language only twice, and the second time it is within parentheses, indicating its optional nature. We are of the opinion that repetition of this legal maxim a second and third time in this case was excessive and tended to overemphasize yet another legal principle exculpatory to defendant.

[9] By their final assignment of error, plaintiffs argue that the trial judge erred in refusing to insert the word "probably" into the pattern jury instruction defining proximate cause.

The trial court instructed the jury that

*[p]roximate cause is a real cause, a cause without which the claimed injury would not have occurred* and one which under the same or similar circumstances a reasonably careful and prudent person could foresee would probably produce such injury or some similar injurious result.

(Emphasis added.)

Plaintiffs requested the insertion of the word "probably" into this instruction so that the italicized portion would read as follows:

Proximate cause is a real cause, a cause without which the claimed injury probably would not have occurred . . . .

Plaintiffs argue that in denying the requested addition to the charge on the issue of proximate cause, the court "in effect required [them] to prove their case to a moral certainty." We do not agree.

North Carolina case law defines proximate cause as "a cause that produced the result in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such a result was probable under all the facts as they existed." *Nance v. Parks*, 266 N.C. 206, 209, 146 S.E. 2d 24, 27 (1966). *See also Kanoy v. Hinshaw*, 273 N.C. 418, 426, 160 S.E. 2d 296, 302 (1968); *Williams v. Boulerice*, 268 N.C. 62, 68, 149 S.E. 2d 590, 594 (1966). This was the precise meaning conveyed to the jury by Judge Hobgood in his instructions defining proximate cause.

We are further convinced that the instructions did not place an erroneous burden on plaintiffs to prove their case to a moral certainty because Judge Hobgood repeatedly emphasized that plaintiffs' burden was to prove only "by the greater weight of the evidence" that defendant's conduct was one of the proximate causes of Mrs. Wall's injury. We also note that the jury was instructed that proximate cause "is a cause without which the claimed injury would not have occurred and one which . . . would *probably* produce such injury . . . ." In our opinion, the insertion

of the word "probably" a second time in the definition of proximate cause would not have changed the juror's perception of the plaintiffs' burden in this case.

We therefore hold that the instructions on the definition of proximate cause, when considered in conjunction with the instructions on plaintiffs' burden of proof, were legally correct. This assignment of error is overruled.

We now turn to defendant's assertion that he "has not waived his conditional cross-appeal" relating to the trial court's failure to dismiss Mr. Wall's claim for loss of consortium. The basis of defendant's cross-appeal is, however, stated only in a footnote in the brief presented to this Court.

We recognize that pursuant to Rule 10(d),

an appellee may set out exceptions to and cross-assign as error any action or omission of the trial court to which an exception was duly taken or as to which an exception was deemed by rule or law to have been taken, and which deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal has been taken.

It is our conclusion, however, that the proper manner to preserve such a conditional cross-appeal for review in this Court is to set out the exceptions to which the assignment relates and to bring forth the assignment of error as a separate question presented in the brief. *See* North Carolina Rules of Appellate Procedure, Rule 10(a). ("No exception . . . which is not made the basis of an assignment of error may be considered on appeal.") A party is not entitled to rely upon the arguments presented in his brief to the Court of Appeals. Counsel is required to file a new and complete brief in this Court. Rule 15(g)(2) (the parties "shall file a new brief prepared in conformity with Rule 28 in the Supreme Court . . . .").

Although defendant's conditional cross-appeal has not been properly preserved for appellate review, in the interests of judicial economy we elect pursuant to Rule 2 of the North Caro-

lina Rules of Appellate Procedure to consider the merits of defendant's arguments.

[10]  The basis of defendant's conditional cross-appeal is that the trial court erred in denying his motion to dismiss the claim of J. Garfield Wall for loss of consortium because such claim arose more than three years prior to the commencement of his action and was therefore barred by the statute of limitations.

The statute applicable to this action is G.S. 1-52(5), which provides that any cause of action for "injury to the person or rights of another, not arising on contract and not hereafter enumerated" must be brought within three years from the time the cause of action accrues.

Mr. Wall alleged in his complaint that the negligence upon which the cause of action for loss of consortium is based occurred in early September 1977. Mr. Wall filed the complaint on 27 February 1981 which, defendant contends, was outside the three-year period of limitations set forth in G.S. 1-52(5).

In our view, resolution of this issue cannot be undertaken by a mere computation of the time between the events giving rise to plaintiff's claim and the filing of the complaint. Thus, in order to fully address defendant's contentions, we briefly review the law in North Carolina relating to a spouse's right to sue for loss of consortium due to the negligence of a third party.

At common law, a husband could sue negligent third parties for loss of his wife's consortium, but a wife had no comparable cause of action until this Court's decision in *Hipp v. Dupont*, 182 N.C. 9, 108 S.E. 318 (1921). In *Hipp*, the Court held that as a husband could continue to sue for loss of his wife's consortium, then by virtue of the married women's provision in the North Carolina Constitution of 1868, Article V, Section 6, and by virtue of logic and fairness, the plaintiff's wife could also maintain an action in her own behalf for loss of her husband's consortium.

Four years later, this Court expressly overruled the *Hipp* decision in *Hinnant v. Tidewater Power Co.*, 189 N.C. 120, 126 S.E. 307 (1925), and held that in North Carolina a wife could no longer maintain an action for loss of consortium due to the negligence of a third party. The common law right of a husband to

maintain such an action, however, remained intact. This apparent inequity was addressed in *Helmstetler v. Duke Power Co.*, 224 N.C. 821, 32 S.E. 2d 611 (1945). In *Helmstetler*, the rule was established that neither spouse could recover for loss of consortium due to negligent injuries to the other spouse.

Thus, the cause of action for loss of consortium was not recognized in North Carolina until our more recent decision in *Nicholson v. Hugh Chatham Memorial Hospital, Inc.*, 300 N.C. 295, 266 S.E. 2d 818 (1980). In that case, the cause of action for loss of consortium due to the negligence of third parties was restored to both spouses. The *Nicholson* decision was given retrospective application in *Cox v. Haworth*, 304 N.C. 571, 576, 284 S.E. 2d 322, 326 (1981), to "all cases or claims pending and not barred by judgment, settlement or the statute of limitations as of 3 June 1980," the date of the *Nicholson* decision.

Plaintiff argues that although the events giving rise to his claim for loss of his wife's consortium occurred prior to 3 June 1980, he has a viable cause of action by virtue of the *Cox* decision giving *Nicholson* retroactive application. He further argues that his cause of action did not accrue until the date of the *Nicholson* opinion and therefore his claim was timely filed on 27 February 1981, well within the three-year statute of limitations established by G.S. 1-52(5).

Defendant, however, takes the position that plaintiff has no cause of action for loss of consortium because the retroactive application of *Nicholson* does not extend to Mr. Wall. Furthermore, defendant argues, even if *Nicholson* applies to this plaintiff's claim, his cause of action accrued on 3 September 1977, the date of the allegedly negligent medical treatment of Mrs. Wall, and therefore his action was barred by the statute of limitations when filed in February 1981.

We first examine the *Cox* opinion to determine whether it was intended that *Nicholson* be retrospectively applied so that this plaintiff would be entitled to sue for the loss of his wife's consortium.

As earlier stated, *Cox* provided that the *Nicholson* decision "recognizing a claim for loss of consortium will be applied to all cases or claims pending and not barred by judgment, settlement

or the statute of limitations as of 3 June 1980." 304 N.C. at 576, 284 S.E. 2d at 326.

Defendant argues that this language from the *Cox* decision "resolved any uncertainty as to the application of *Nicholson . . .* [and] is directly on point for the present action . . . ." "[It] indicates that Mr. Wall's action, barred by the statute of limitations, should have been dismissed." Defendant's Brief to the Court of Appeals, p. 34.

This logic is, in our view, fallacious in two crucial respects. First, the *Cox* decision limited retrospective application of *Nicholson* to those "cases or claims . . . not barred by . . . the statute of limitations *as of June 3, 1980.*" (Emphasis added.) Even assuming, *arguendo*, that plaintiff's cause of action accrued on 3 September 1977 when defendant administered medical care to Mrs. Wall in an allegedly negligent manner, plaintiff's cause of action would not have been barred by the statute of limitations *as of June 3, 1980.* Plaintiff would have had an additional three months to file his claim under the time limitations imposed by G.S. 1-52(5). Thus, this language limiting the retrospective application of the *Nicholson* decision does not operate to preclude Mr. Wall's suit for loss of consortium.

There is, however, an even more important reason to eschew defendant's interpretation of this language defining the retroactive application of *Nicholson.*

The *Nicholson* Court reestablished the right to maintain a cause of action for loss of consortium in North Carolina with the explicit proviso that a spouse's action for loss of consortium be joined with the other spouse's action for personal injury. 300 N.C. at 304, 266 S.E. 2d at 823. In light of this compelled joinder of the two actions, we interpret the effect of the *Cox* language on retroactivity to recognize a cause of action for loss of consortium so long as the *original negligence claim* of the injured spouse was not barred by "judgment, settlement or the statute of limitations as of 3 June 1980." Only by interpreting this language to refer to negligence claims can we give effect to the words "all cases or claims *pending*" that are not barred "as of 3 June 1980." There could be no cases or claims *pending* on *that date* in which a spouse alleged loss of consortium due to the negligence of a third party, since the cause of action for loss of consortium was not

restored until that date. For the same reason, there could be no claims for loss of consortium barred by "judgment" or "settlement" as of 3 June 1980, for no claims of that nature would have been filed until the *Nicholson* decision restored the right to sue for this type of injury. Thus, we interpret the ultimate holding in *Cox* to provide retrospective application of the *Nicholson* decision to those cases where the spouse's original claim of negligence against the offending party had not been barred as of 3 June 1980 by judgment, settlement or the statute of limitations. In other words, if on 3 June 1980, a person had a viable claim against a third party for negligence, his or her spouse could bring an action for loss of consortium, to be joined with the negligence action against the defendant.

In the instant case, defendant's allegedly negligent acts occurred on 3 September 1977. Mrs. Wall instituted her medical malpractice action against Dr. Stout on 15 November 1979. Thus, her action was in no way barred as of 3 June 1980. Under our interpretation of *Cox*, the *Nicholson* decision recognizing a claim for loss of consortium should therefore be applied retrospectively to Mrs. Wall's pending case, thereby allowing Mr. Wall's claim to be joined with her original action for negligence.

We are now confronted with defendant's argument that even if *Nicholson* is applied retroactively so as to recognize Mr. Wall's cause of action for loss of his wife's consortium, that the statute of limitations had run on his claim by the time he filed his action on 27 February 1981. Defendant asserts that since the allegedly negligent acts occurred on 3 September 1977, that the statute of limitations commenced to run on that date and therefore expired on 3 September 1980. Under this analysis, plaintiff's claim was filed some five and one-half months too late.

As earlier stated, plaintiff takes issue with this analysis. Plaintiff's position is that the cause of action for loss of consortium accrued on 3 June 1980, the date of the *Nicholson* opinion, that the statute of limitations did not begin to run until that time, and that his claim was therefore timely filed on 17 February 1981.

In *Burleigh House Condominium, Inc. v. Buchwald*, 368 So. 2d 1316 (Fla. 3d Dist. Ct. App.), *cert. denied*, 379 So. 2d 203 (Fla. 1979), the Florida District Court of Appeals reached the result

contended for by plaintiff on similar facts. In *Burleigh*, a condominium association brought suit on behalf of itself and its members to recover damages and equitable relief against the condominium developer. Such a cause of action was first recognized by the Florida Supreme Court in an opinion filed 31 March 1977. *Avila South Condominium Association, Inc. v. Kappa Corporation*, 347 So. 2d 599 (Fla. 1977). Ten years prior thereto it had been held that such a cause of action did not exist. *Fountainview Association, Inc. #4 v. Bell*, 203 So. 2d 657 (Fla. 3d Dist. Ct. App. 1967), *cert. denied*, 214 So. 2d 609 (Fla. 1968).

The plaintiffs in *Burleigh* filed the suit against the corporate developers one month after the *Avila* decision. The lease was executed, however, in 1969 and the condominium units were sold by 1970 or 1971. Thus, the defendant argued, the four-year statute of limitations had run by 15 April 1977 and plaintiffs' claim was not timely filed.

The Florida court disagreed, holding that the plaintiffs' cause of action against the condominium developer did not accrue until the date of the *Avila* decision and the date of that decision marked the commencement of the running of the statute of limitations. Plaintiffs' case was, then, timely filed one month later.

This interpretation of when a cause of action will be deemed to have accrued is supported by *United States v. One 1961 Red Chevrolet Impala Sedan*, 457 F. 2d 1353 (5th Cir. 1972), and *Neely v. United States*, 546 F. 2d 1059 (3rd Cir. 1976), *rehearing denied*, 554 F. 2d 114 (1977).

In the *Red Chevrolet* case, the owner of a motor vehicle filed suit to obtain the return of his vehicle which had been seized by the government in 1963 under circumstances not here pertinent. At the time of the seizure and forfeiture of the plaintiff's property, the state of the law was such that the right of an owner to require restitution of a vehicle so seized and forfeited did not exist.

In 1968, the United States Supreme Court established the right of an owner to obtain return of a vehicle seized under such circumstances as were present in the plaintiff's case. *Marchetti v. United States*, 390 U.S. 39 (1968) and *Grosso v. United States*, 390

U.S. 62 (1968). In the action filed thereafter by the plaintiff,[3] the government contended that the action was barred by the six-year statute of limitations. The *Red Chevrolet* Court rejected the government's argument, holding that the plaintiff's cause of action did not accrue as of the date of the taking of his property, but rather at the time of the 1968 decisions which recognized the existence of the cause of action which could not have been successfully asserted previously. In explaining their ruling, the Court said:

> The period of limitations does not always begin on the date of the wrong. . . . No cause of action generally accrues until the plaintiff has a right to enforce his cause. . . . The right to sue is hollow indeed until the right to succeed accompanies. Patently, appellant in the instant case had no reasonable probability of successfully prosecuting his claim against the government prior to the enunciation of the *Marchetti-Grosso* rule on January 29, 1968. We realize that mere ignorance of one's rights will not toll the limitations period. . . . This is not, however, a case in which a plaintiff is ignorant of his rights, but rather a case of a plaintiff without a right.

457 F. 2d at 1358 (citations omitted).

In a situation almost identical to that presented in the *Red Chevrolet* case, the Third Circuit Court of Appeals in *Neely v. United States*, 546 F. 2d 1059 (3rd Cir. 1976), stated as follows:

> To require clairvoyance in predicting new jurisprudential furrows plowed by the Supreme Court, under these circumstances, would be to impose an unconscionable prerequisite to asserting a timely claim.

> Accordingly, we hold that rights accruing under *Marchetti* and *Grosso* were inherently unknowable prior to January 29, 1968, when those cases were decided. The stat-

---

3. It is not entirely clear from the *Red Chevrolet* opinion when the plaintiff in that case filed the motions seeking to set aside the prior forfeiture and to obtain the return of all money and personal property previously forfeited. It is clear, however, that the suit was filed more than six years after the government actually executed the unlawful taking of the plaintiff's property.

ute of limitations on such claims was, therefore, suspended and did not begin to run until that date.

546 F. 2d at 1068.

We are persuaded by this reasoning and therefore hold that plaintiff's cause of action for loss of consortium did not accrue until the date of the *Nicholson* opinion, 3 June 1980. Therefore, the plaintiff's suit, which was instituted on 27 February 1981, was timely filed within the three-year statute of limitations and the trial judge correctly denied defendant's motion to dismiss Mr. Wall's claim.

For the reasons hereinabove stated regarding errors in the jury instructions, the decision of the Court of Appeals is reversed. This cause is remanded to the Court of Appeals with directions to remand to the Superior Court of Granville County for a new trial.

Reversed and remanded.