MARY CAROL RORRER v. ARTHUR O. COOKE

No. 8317SC702

(Filed 3 July 1984)

**Attorneys at Law § 5.1— attorney negligence in medical malpractice case—genuine issue of material fact**

     The evidence on motion for summary judgment presented a genuine issue of material fact as to whether defendant attorney was negligent in his representation of plaintiff in a medical malpractice action by failing to obtain adequate expert consultation in evaluating plaintiff's claim, failing properly to cross-examine expert witnesses and failing properly to investigate, assemble and present relevant evidence at trial.

APPEAL by plaintiff from *DeRamus, Judge.* Judgment entered 28 March 1983 in Superior Court, ROCKINGHAM County. Heard in the Court of Appeals 12 April 1984.

This is a legal malpractice action against defendant, a Greensboro attorney, arising from defendant's alleged negligence in representing plaintiff in a medical malpractice action. The executrix of defendant's estate was substituted as party defendant by order of this Court on 21 November 1983.

The uncontested facts show that on 25 October 1971 plaintiff underwent a tonsillectomy and adenoidectomy performed by Dr. Carl A. Sardi, a Greensboro otolaryngologist. Otolaryngology is the field of medicine involving treatment and surgery in respect to ear, nose and throat illnesses, disorders and diseases. Immediately after the surgery, plaintiff was unable to manipulate her tongue. She experienced considerable difficulty in both eating and talking. When this paralysis persisted, Dr. Sardi referred plaintiff to Dr. Joseph W. Steifel, a Greensboro neurologist. In February of 1972 plaintiff saw several otolaryngologists at Duke University Medical Center. Finally in March of 1972 plaintiff met

with defendant to discuss bringing a malpractice action against Dr. Sardi.

On 7 June 1974 plaintiff filed a complaint against Dr. Sardi alleging that he failed to exercise due care in performing the tonsillectomy and adenoidectomy; that as a result of this failure permanent damage was inflicted upon that portion of plaintiff's nervous system which controls her tongue and that Dr. Sardi's negligent application of a tongue clamp was one of the proximate causes of plaintiff's injury and damage.

At the medical malpractice trial plaintiff and her husband testified that Dr. Sardi admitted to them that pressure from a tongue clamp used during surgery caused the injury to plaintiff's tongue. Dr. Sardi denied this admission. Plaintiff also presented the testimony of Dr. Steifel. The Greensboro neurologist testified that upon initially examining plaintiff he believed her paralysis was caused by some injury or involvement to the hypoglossal nerve, the nerve which controls the tongue's movement. On cross-examination, however, Dr. Steifel stated that after examining a subsequent pathology report on a biopsy of plaintiff's tongue, he found this report to be inconsistent with injury to the nerve.

Plaintiff then read into evidence the deposition of Dr. T. Boyce Cole, a Duke otolaryngologist who examined plaintiff in February of 1972. Plaintiff posed the following hypothetical question to Dr. Cole:

Do you have an opinion satisfactory to yourself as to whether or not the application of too much pressure on the plaintiff's tongue by a device utilized by the defendant during the course of the operation . . . could or might have resulted in impairment of her hypoglossal nerve, which, in turn, could or might have resulted in the immobilization of plaintiff's tongue . . .?

Dr. Cole responded:

I think it may be possible to apply enough pressure to cause what we see, but I have never seen it in any other patient and have never heard of it . . . . And I would think it would be certainly unusual, and I don't really think that under the usual techniques of doing a tonsillectomy that you would exert enough pressure to cause this problem.

Later in his deposition Dr. Cole testified that he did not know how a jury could conclude that Dr. Sardi applied excessive pressure to plaintiff's tongue, thereby causing the injury at issue.

Defendant presented his own testimony and that of Dr. William M. Satterwhite, Jr., a Winston-Salem otolaryngologist. Dr. Satterwhite was of the opinion that there was nothing Dr. Sardi did or did not do during the surgery which could have damaged plaintiff's tongue. The foregoing evidence was heard by a jury who found no negligence on Dr. Sardi's part.

On 26 August 1982 plaintiff filed a complaint against defendant. Therein she alleged:

8. Defendant was negligent in his representation of Mary Carol Rorrer and failed to apply the high degree of attention and care which he had agreed to in the prosecution of Mary Carol Rorrer's claim in the following respects:

a. he failed to obtain adequate expert consultations from physicians qualified to evaluate plaintiff's claim;

b. he failed to properly investigate, assemble and present relevant evidence at the trial;

c. he failed to properly cross-examine Dr. Sardi concerning his treatment and evaluation of his patient;

d. he failed to present the existing neurological evidence concerning plaintiff's tongue paralysis;

e. he failed to properly cross-examine Dr. Satterwhyte, a defense witness;

f. he failed to properly cross-examine Dr. Steifel;

g. he failed to locate, subpoena and present the testimony of Carol Taylor, another patient of Dr. Sardi's who experienced the same type of tongue paralysis following the same type of tonsillectomy procedure;

h. he failed to properly cross-examine Dr. Sardi concerning statements made by him to plaintiffs herein;

i. he failed to offer into evidence conversations and office records of Dr. Rosen and failed to subpoena Dr. Rosen or any of his office records;

Rorrer v. Cooke

j. he failed to perfect an appeal from the judgment entered on the verdict even though notice of appeal was given and there was no conversation held between plaintiff and defendant concerning an abandonment of any appeal.

In his answer defendant denied any negligence and alleged "that in his representation of Mrs. Rorrer that he at all times exercised his best judgment, exercised good judgment, and exercised reasonable and ordinary care and diligence in the use of his skill and in the application of his knowledge to all matters to the preparation of and prosecution of her claim." Defendant also moved for summary judgment supported by the record of the medical malpractice action and affidavits.

After considering defendant's motion for summary judgment and plaintiff's opposing affidavits, the trial court ordered that plaintiff's action be dismissed with prejudice. Plaintiff appealed.

*McCain & Essen, by Grover C. McCain, Jr. and Jeff Erick Essen, for plaintiff appellant.*

*Smith, Moore, Smith, Schell & Hunter, by Stephen P. Millikin and Alan W. Duncan, for defendant appellee.*

ARNOLD, Judge.

The question presented on appeal is whether genuine issues of material fact exist. We hold that the affidavits filed by plaintiff in opposition to defendant's motion for summary judgment raise such issues.

Summary judgment is proper only when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. G.S. 1A-1, Rule 56(c). When a motion for summary judgment is made, all materials before the court must be examined in the light most favorable to the nonmovant. The slightest doubt as to the facts entitles the nonmovant to a trial. *Miller v. Snipes*, 12 N.C. App. 342, 183 S.E. 2d 270, *cert. denied*, 279 N.C. 619, 184 S.E. 2d 883 (1971). Upon examining the parties' pleadings, depositions, affidavits and record in the medical malpractice trial, we conclude that an issue of fact exists as to the negligence of defendant in his representation of plaintiff.

In his motion for summary judgment, defendant alleged that there was no negligence on his part in preparing and prosecuting plaintiff's claim against Dr. Sardi. Defendant filed nine supporting affidavits, wherein he swore that he used his best judgment, acted in good faith and exercised reasonable and ordinary care and diligence in the use of his skill and in the application of his knowledge to plaintiff's case. Defendant swore that it was his best judgment not to consult with, nor seek to obtain the testimony of, any otolaryngologist other than Dr. Cole. He swore that after considering the information furnished by plaintiff, her husband, the several doctors and all medical records, he was of the opinion that the best and only theory of injury was Dr. Sardi's placing too much pressure on plaintiff's tongue during surgery. As to his failure to locate Carol Taylor, a former patient of Dr. Sardi's who also suffered tongue paralysis, defendant swore that he was unable to locate Taylor after diligent efforts and that her testimony would not have been admissible or helpful.

Defendant also filed the affidavits of the judge who presided over the medical malpractice trial, two attorneys who represented Dr. Sardi during the trial and two Greensboro attorneys who have tried medical malpractice cases. These men examined the trial transcript, depositions, exhibits and defendant's affidavits. They swore that in their opinion defendant possessed the requisite degree of learning, skill and ability which other attorneys similarly situated ordinarily possess; that defendant exerted his best judgment in the handling of all matters on behalf of plaintiff and that defendant exercised reasonable and ordinary care and diligence in the use of his skill and the application of his knowledge throughout the medical malpractice trial.

Plaintiff filed opposing affidavits of Dr. Cole and attorney Tim L. Harris. Dr. Cole swore that he saw plaintiff in February of 1972 and could find no explanation for the cause of plaintiff's paralysis. Dr. Cole swore that he was later contacted by defendant concerning the medical malpractice suit. At that time Dr. Cole and defendant discussed defendant's theory of whether the clamp used during surgery could have placed sufficient pressure on plaintiff's tongue and, as a result, caused "ischemic damage" to the tongue. Dr. Cole swore:

At that time, I told Mr. Cooke that I did not know what caused Mrs. Rorrer's tongue damage without knowing the details of the tonsillectomy procedure and I further told him that I thought it unlikely that a tongue retractor could exert enough pressure to produce this result. Mr. Cooke explained the purpose of a hypothetical question to me, and asked me to assume as a hypothetical fact, that sufficient pressure was, in fact, exerted to the tongue by the tongue retractor to impair blood flow. I explained to Mr. Cooke that, assuming an impaired blood flow from whatever cause, it could have produced the tongue damage. However, I reiterated to Mr. Cooke more than once that it was opinion that a tongue retractor could not place sufficient pressure on the tongue to cause ischemic damage. This explains my deposition testimony as to why I thought the tongue retractor theory to be an unlikely candidate for the tongue paralysis. I attempted to explain to Mr. Cooke that I could not support such a medical theory when he visited my office before taking my deposition.

Tim L. Harris, in his affidavit, swore that his legal practice involved medical malpractice cases and that he was familiar with the standards of practice of attorneys with similar background and experience in communities similar to Greensboro. Upon examining the medical malpractice record, exhibits, defendant's deposition and supporting affidavits, Harris reached the following opinion:

[D]espite Mr. Cooke's knowledge as to the weak nature of the testimony of Dr. Cole contained in his deposition, Mr. Cooke failed to subpoena or secure the testimony of the other attending physicians which she [plaintiff] had at Duke Hospital, including neurologists who ran electromyographic studies on her tongue which is an objective basis of proving nerve damage in the tongue and other medical witnesses. . . .

On balance, and after having carefully considered the matter and the time of the trial, it is my opinion that the failure of this case was due to the fact that no medical witness supported, in any convincing manner, the medical theory which Mr. Cooke advanced at the trial. This medical theory also hampered Mr. Cooke in the cross-examination of the de-

fendants expert witnesses. Being tied to a medical theory which was not accepted by any medical witness who gave testimony in the case was an overwhelming reason why the jury was not convinced of the merits of Mrs. Rorrer's claim. . . . In this regard, Mr. Cooke failed to obtain the consultation advice of an otolaryngologist disassociated with Mrs. Rorrer's case for the purpose of thoroughly reviewing her case for the purpose of arriving at a medical theory of negligence. . . . Thus, it is my opinion that the representation given by Mr. Arthur O. Cooke to Mrs. Mary Carol Rorrer to and through her trial did not comply with the existing standard for the handling of medical malpractice claims in May of 1978 and communities similar to Greensboro, North Carolina.

The foregoing affidavits raise a genuine issue of fact as to whether defendant failed to obtain adequate expert consultation in evaluating plaintiff's claim, whether defendant failed to properly cross-examine expert witnesses and whether he failed to properly investigate, assemble and present relevant evidence at the trial.

In representing plaintiff, defendant was governed by the following standard of care set out in *Hodges v. Carter*, 239 N.C. 517, 80 S.E. 2d 144 (1954):

Ordinarily when an attorney engages in the practice of the law and contracts to prosecute an action in behalf of his client, he impliedly represents that (1) he possesses the requisite degree of learning, skill, and ability necessary to the practice of his profession and which others similarly situated ordinarily possess; (2) he will exert his best judgment in the prosecution of the litigation entrusted to him; and (3) he will exercise reasonable and ordinary care and diligence in the use of his skill and in the application of his knowledge to his client's cause. (Citations omitted.)

An attorney who acts in good faith and in an honest belief that his advice and acts are well founded and in the best interest of his client is not answerable for a mere error of judgment or for a mistake in a point of law which has not been settled by the court of last resort in his State and on

which reasonable doubt may be entertained by well-informed lawyers. (Citations omitted.)

Conversely, he is answerable in damages for any loss to his client which proximately results from a want of that degree of knowledge and skill ordinarily possessed by others of his profession similarly situated, or from the omission to use reasonable care and diligence, or from the failure to exercise in good faith his best judgment in attending to the litigation committed to his care. (Citations omitted.)

*Id.* at 519-520, 80 S.E. 2d at 145-146. The forecast of evidence in the case on appeal clearly raises issues of fact regarding whether defendant complied with this standard of care.

In malpractice actions against attorneys, expert evidence is generally required to establish the attorney's breach of his duty of care. Annot., 14 A.L.R. 4th 170 (1982).

[T]he cases in which courts seem most reluctant to uphold a finding of negligence on the part of an attorney in the absence of expert evidence as to his breach of his duty of care are those in which the alleged negligence involves the attorney's choice of trial tactics, an area generally conceded to involve questions of judgment too fine to be decided by laymen.

*Id.* at 174. The defendant here provided five affidavits of legal experts who attested that he met the standard of care in *Hodges v. Carter*. In response to these affidavits, plaintiff filed the affidavit of one legal expert. Plaintiff's expert swore: "it is my opinion that the representation given by Mr. Arthur O. Cooke to Mrs. Carol Rorrer to and through her trial did not comply with the existing standard for the handling of medical malpractice claims in May of 1978 and communities similar to Greensboro, North Carolina."

"When a motion for summary judgment is made and supported . . . , an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided . . . , must set forth specific facts showing that there is a genuine issue for trial." G.S. 1A-1, Rule 56(e). Where, as here, defendant offered experts' opinions regarding the negligence issue and plaintiff offered her own expert's opinion in opposition, a question of material fact was raised. The fact that

defendant filed more supporting affidavits than plaintiff goes only to the issues of credibility and sufficiency of the evidence, two issues which have traditionally been the province of the jury. *See Lee v. Shor*, 10 N.C. App. 231, 178 S.E. 2d 101 (1970), and 1 Brandis on North Carolina Evidence § 8 at 26 (Second Rev. Ed. 1982).

Defendant argues that summary judgment in his favor was proper, because each allegation of negligence in plaintiff's complaint involved no more than an exercise in good faith of defendant's best judgment. In support of this argument defendant gives the earlier cited rule in *Hodges v. Carter, supra* at 520, 80 S.E. 2d at 146:

> An attorney who acts in good faith and in an honest belief that his advice and acts are well founded and in the best interest of his client is not answerable for a mere error of judgment or for a mistake in a point of law which has not been settled by the court of last resort in his State and on which reasonable doubt may be entertained by well-informed lawyers.

Defendant notes the recent application of this rule in *Quality Inns v. Booth, Fish, Simpson, Harrison and Hall*, 58 N.C. App. 1, 292 S.E. 2d 755 (1982).

In both *Hodges* and *Quality Inns*, the reviewing courts affirmed judgments in favor of the defendant attorneys. The facts in both cases, however, are distinguishable from the facts here. In *Hodges*, the uncontested facts showed that plaintiff failed to produce *any* evidence tending to show a breach of defendant's duty. Moreover, the alleged negligent act of defendant involved conduct which had been the prevailing custom among attorneys in the State for two decades and had been declared valid by a superior court judge.

In *Quality Inns*, the plaintiff filed the affidavit of an attorney in response to defendant attorney's motion for summary judgment. Plaintiff's expert, however, did not make any averments concerning the negligence of the defendant attorney. Furthermore, the legal problem at issue stemmed from an uncertain and unsettled area of the law.

Defendant has failed to realize that the forecast of evidence raises an issue of negligence, which involves more than whether

defendant exercised his best judgment. In determining this issue, the jury must also consider whether defendant possessed the requisite degree of learning, skill and ability and whether he exercised reasonable and ordinary care and diligence in representing plaintiff. A recent decision by the North Carolina Supreme Court supports our position.

In *Wall v. Stout*, 310 N.C. 184, 311 S.E. 2d 571 (1984), the Supreme Court examined the scope of a physician's duty to his patient. This duty is almost identical to an attorney's duty to his client as set out in *Hodges v. Carter, supra.* The Court emphasized:

> The applicable standard, then, is completely unitary in nature, combining in *one test* the exercise of "best judgment," "reasonable care and diligence" *and* compliance with the "standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities."

*Id.* at 193, 311 S.E. 2d at 577.

Defendant also argues that summary judgment in his favor was proper, because plaintiff failed to make any showing of alleged negligence on the part of defendant which proximately caused her injury. He emphasizes that plaintiff had the burden of showing but for defendant's negligence the medical malpractice suit would have been won. The rules governing summary judgment and the evidence before this Court dispute defendant's argument.

When responding to a motion for summary judgment, the nonmovant is not required to make a *prima facie* case for the jury. "He is only required to show that he has evidence to contest such evidentiary matters as the movant may have produced in support of the motion that would, standing alone, defeat the action." *Durham v. Vine*, 40 N.C. App. 564, 568, 253 S.E. 2d 316, 319 (1979).

Plaintiff, in her unverified complaint, alleged defendant's negligence as the proximate cause of the jury verdict against her. Defendant denied this allegation in his unverified answer. In support of defendant's motion for summary judgment, one of the five legal experts swore that "in my opinion there was no act or omis-

sion on the part of Arthur O. Cooke which was a proximate cause of Mrs. Rorrer not obtaining a jury verdict against Dr. Sardi." In plaintiff's opposing affidavit, her legal expert swore, "It is further my opinion that the departures from these standards of care (for attorneys) contributed greatly to the loss of Mrs. Rorrer's claim when it was tried." Plaintiff has kept the issue of proximate cause alive by responding to the opinion of plaintiff's legal expert with the contradictory opinion of her own legal expert.

It is only when a plaintiff fails to show by competent expert opinion that the defendant attorney's legal tactics and judgments did not meet the required standard of care, that a jury should not pass upon the question of legal malpractice. Here, plaintiff forecasted some such evidence, and summary judgment in defendant's favor must be reversed.

Reversed and remanded.

Judges HEDRICK and PHILLIPS concur.