IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-114

No. 382A21

Filed 4 November 2022

STATE OF NORTH CAROLINA

v.

IVAN GERREN HOOPER


Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 279 N.C. App. 451, 2021-NCCOA-500, finding no error after appeal from a judgment entered on 7 March 2018 by Judge Stanley L. Allen in Superior Court, Rockingham County. Heard in the Supreme Court on 23 May 2022 in session in the Old Burke County Courthouse in the City of Morganton pursuant to N.C.G.S. § 7A-10(a).

*Joshua H. Stein, Attorney General, by Jasmine McGhee, Special Deputy Attorney General, and Zachary Ezor, Solicitor General Fellow, for the State-appellee.*

*Glenn Gerding, Appellate Defender, by John F. Carella, Assistant Appellate Defender, for defendant-appellant.*

ERVIN, Justice.

¶ 1     The issue before the Court in this case is whether a request made by defendant's trial counsel that the trial court instruct the jury concerning the law of self-defense that was made after the conclusion of the jury instruction conference and

prior to the delivery of the trial court's instructions to the jury properly preserved defendant's challenge to the trial court's refusal to deliver the requested instruction for purposes of appellate review and whether the trial court erred by denying defendant's request for the delivery of a self-defense instruction. The Court of Appeals held that defendant had waived the right to appellate review of the trial court's refusal to deliver a self-defense instruction on the basis of the invited error doctrine and that the trial court did not commit prejudicial error by refusing to deliver the requested self-defense instruction. After careful consideration of defendant's challenge to the trial court's judgment in light of the applicable law, we modify and affirm the Court of Appeals' decision.

## I.   Background

### A. Substantive Facts

#### 1.  State's Evidence

¶ 2          On either 1 or 2 March 2017, Ashley Thomas; her uncle Wilbert Reaves; the son that she and defendant had had together; and defendant attended the funeral of defendant's great aunt. Following the funeral, the group went to lunch, after which defendant asked to be taken to a store at which he could obtain cigarettes and purchase bullets, with Ms. Thomas denying both having provided defendant with any assistance in procuring ammunition and having had any conflict with defendant on that day. Similarly, Mr. Reaves testified that the group had gone to lunch together

after the funeral, that Ms. Thomas had taken defendant to get cigarettes, and that defendant had asked "a couple of times [for Ms. Thomas] to purchase him bullets."

¶ 3     Ms. Thomas stated she and her son had visited defendant at the Reidsville Quality Inn on 4 March 2017 in response to a request that defendant had made to Ms. Thomas at her mother's residence that Ms. Thomas come to talk with him and allow him to visit with their son. Upon her arrival at defendant's hotel room, Ms. Thomas testified that she placed her son on the bed and took a seat in a chair by the door. After Ms. Thomas refused defendant's request to get out of the chair, defendant pulled up a chair "directly in front of [her] face" and began to question Ms. Thomas about her relationship with an individual with whom defendant assumed that Ms. Thomas had become romantically involved. When Ms. Thomas asked defendant "[i]s this really why you called me here?," defendant responded, "[w]ell honestly, I don't care. I don't want you anyway, so you can really dismiss yourself." At that point, Ms. Thomas rose to pick up her son and leave.

¶ 4     As Ms. Thomas rose, defendant "g[ot] in [her] face," pushed her, and began to punch her in the face and stomach before hurling her onto the bed as he continued to hit her face. As defendant did this, Ms. Thomas screamed for him to stop and to refrain from acting in this manner in front of their son. Ms. Thomas testified that, as he struck her, defendant stated that "[n]obody is going to be able to save you, but

[your son], and even he is not going to be able to save you today. I'm going to kill you, bitch." At that point, Ms. Thomas claimed that she feared for her life.

¶ 5        After Ms. Thomas "nudged" defendant, the two of them stood up, at which point defendant threw Ms. Thomas on the floor and choked her with his hands. As she was being choked, Ms. Thomas kneed defendant in the groin, causing him to stand up, at which point she ran to the mirror in the rear of the hotel room "to see what [defendant] actually did to [her]." Ms. Thomas did not attempt to leave the hotel room given that defendant had forcibly detained her when she had attempted to depart from his presence at an earlier time.

¶ 6        After examining herself in the mirror, Ms. Thomas grabbed her phone and attempted to return a call that she had received from Mr. Reaves during the course of defendant's assault so that she could let him know that she needed help. As she did so, defendant knocked the phone out of Ms. Thomas' hand, causing the phone to hit the wall of the hotel room and the screen to shatter. Although the phone remained functional, the damage that it had sustained made it difficult for Ms. Thomas to make things out on the screen.

¶ 7        Eventually, Ms. Thomas' attention was drawn to the television stand, on which she saw a firearm. After she picked upon the weapon, defendant grabbed their son and held him between Ms. Thomas and himself. At that point, Ms. Thomas told her son to come to her and informed defendant that, in the event that he refused to let

her leave with her son, she had no choice except to shoot. As a result of the fact that defendant acted as if he was going to lunge towards her, Ms. Thomas pulled the trigger at a time when the gun was pointed at the floor, at which point defendant exclaimed, "I've been shot," grabbed her hand, and asked that she relinquish possession of the weapon, a step that Ms. Thomas refused to take. However, when defendant asked "if I let it go, can I leave with you?," Ms. Thomas acquiesced in that request. As soon as defendant released her hand, however, Ms. Thomas grabbed their son, ran to her automobile, returned to her home, and contacted the Reidsville Police Department. Subsequently, Ms. Thomas told Mr. Reaves that "she had shot [defendant] because he was beating her."

¶ 8         Although a friend had given her a .22 caliber pistol about a week prior to 4 March 2017, Ms. Thomas denied having had that weapon in her possession at the time of her encounter with defendant at the Quality Inn. In addition, Ms. Thomas denied that she had had any intention of harming defendant at the time that she went to meet him at the hotel. On the other hand, Ms. Thomas had previously informed one of her friends that she had a weapon and had insinuated that she would use it to protect herself from defendant.

¶ 9         At approximately 5:15 p.m. on 4 March 2017, Ms. Thomas called the Reidsville Police Department to report an alleged assault that had allegedly occurred at the Quality Inn. Ms. Thomas told Officer Scott Brown of the Reidsville Police

Department that she had gotten into an altercation with defendant, who is the father of her three-year-old son. At the time of her conversation with Officer Brown, Ms. Thomas' face and neck were visibly bruised and swollen.

¶ 10      In the course of discussing the incident with Officer Brown, Ms. Thomas stated that, at defendant's request, she had visited him at a room that he had rented at the Quality Inn and that, following her arrival, defendant began questioning her about her relationship with another man. After defendant began acting in an aggressive manner, the two of them became involved in an altercation. Ms. Thomas stated that, when defendant attempted to obtain possession of a firearm that was already in the hotel room, she reached for it as well. According to Ms. Thomas, the gun discharged in the ensuing struggle, at which point Ms. Thomas returned home with their child. Officer Brown retrieved a Rossi .357 Magnum revolver that contained two spent shell casings and four live rounds from Ms. Thomas' home.

¶ 11      At the time that Sergeant Kenneth Mitchell of the Reidsville Police Department spoke with Ms. Thomas, he observed that she had bruises across the bridge of her nose and eyes, bruises and red marks around both sides of her neck, a laceration on her cheek, and scratches running down her chest. On 8 March 2017, Sergeant Mitchell examined the hotel room in which the incident between defendant and Ms. Thomas had occurred and identified the location at which a projectile had hit the floor. In view of the fact that the carpet in the hotel room had been placed

directly over a concrete floor, there was no way to identify the path at which that projectile had been travelling. Sergeant Mitchell determined that, based upon information that had been provided to him by Ms. Thomas and the damage that he observed to the bedspread, the box springs, and the floor, a bullet had ricocheted off the floor and struck defendant in his left calf. According to Sergeant Mitchell, the fact that both participants in the altercation admitted to having had their hands on the firearm and that no fingerprints had been detected on the weapon made it pointless for him to have any testing performed upon any of the blood that had been detected in the hotel room.

¶ 12      At 11:50 p.m. on 5 March 2017, Officer Jason Joyce of the Reidsville Police Department responded to a report that an individual who had sustained a gunshot wound had come to Cone Health Annie Penn Hospital. Defendant, who was the person in question, told Officer Joyce that Ms. Thomas had brought their child to the Quality Inn, that their conversation had turned into an argument, and that Ms. Thomas had pulled out a gun and shot him in the leg. According to defendant, after Ms. Thomas pulled out the firearm, he had advanced towards Ms. Thomas for the purpose of taking the gun from her, and that, as he did so, the two of them struggled, she shot him, and then she left the hotel room with their child.

### 2. Defendant's Evidence

¶ 13    The mother of one of defendant's sons, Marcelina Machoca, testified that, prior to 4 March 2017, she and Ms. Thomas had communicated using electronic messages after Ms. Machoca had driven defendant to the hospital to visit his ailing great aunt. Ms. Machoca testified that Ms. Thomas was upset that Ms. Machoca and defendant had been around each other; that Ms. Thomas had stated that defendant "was just using [Ms. Machoca]"; and that Ms. Thomas and defendant were trying to get back together.  Ms. Thomas told Ms. Machoca "that [defendant] had been going to [Ms. Thomas'] house almost every morning" and that, "since he was hanging around [Ms. Machoca,] . . . he needed to stop coming around [Ms. Thomas'] house because one of her guy friends had [given] her a gun, and if he came around again, she wouldn't have no problem using it."  Marsena Jones, a cousin to both Ms. Thomas and defendant, testified that defendant did not own a firearm and that Ms. Thomas had not mentioned either shooting defendant or otherwise discharging a firearm during her conversations with Ms. Jones.

¶ 14    Felicia Donnell, who was defendant's mother and one of Ms. Thomas' acquaintances, testified that she had contacted Ms. Thomas on 3 March 2017 for the purpose of communicating defendant's request that Ms. Thomas come to see him at the Quality Inn.  At that time, Ms. Donnell had advised Ms. Thomas against seeing defendant because "their relationship is like nitro and glycerin."  In addition, Ms.

Donnell testified that she had received a call from Ms. Thomas after 4:00 p.m. on 4 March 2017 and that Ms. Thomas had seemed to be very upset during that conversation. According to Ms. Donnell, Ms. Thomas stated that, "I shot him. I shot your son"; that Ms. Thomas claimed to have gone to see defendant; that Ms. Thomas had feared for her life during their encounter; and that Ms. Thomas had possessed a firearm during her encounter with defendant. In addition, Ms. Donnell testified that Ms. Thomas told her that she pointed the gun at defendant, that she had asked defendant if he was going to kill her, that defendant had responded by demanding that Ms. Thomas give him the weapon, and that a shot had been fired. According to Ms. Donnell, Ms. Thomas had stated that, after the shot had been fired, a scuffle had ensued, that another shot had been fired during the scuffle, and that defendant had looked at his leg. Ms. Thomas also told Ms. Donnell that defendant had choked and punched her during the interval between the two shots and had exclaimed, "you shot me, you shot me," after the firing of the second shot. Ms. Thomas did not tell Ms. Donnell how she had come to be in possession of the firearm from which the shot that struck defendant had been fired. After speaking with Ms. Thomas, Ms. Donnell called defendant and told him that he needed to go to the hospital to seek medical treatment. On the following day, defendant told Ms. Donnell that he was going to the hospital and knew that he would be placed under arrest once he did that.

**B. Procedural History**

On 10 April 2017, the Rockingham County grand jury returned bills of indictment charging defendant with assault by strangulation, communicating threats, assault on a female, interfering with an emergency communication, and possession of a firearm by a felon. On 5 February 2018, the Rockingham County grand jury returned a bill of indictment charging defendant with having attained the status of a habitual felon.

The charges against defendant came on for trial before the trial court and a jury at the 5 March 2018 criminal session of Superior Court, Rockingham County. At the jury instruction conference that the trial court conducted with counsel for both the State and defendant, the trial court described the instructions that it intended to deliver to the jury without making any mention of the issue of self-defense. After some discussion, neither the prosecutor nor defendant's trial counsel expressed any objections to the trial court's proposed jury instructions or requested the trial court to deliver any additional instructions. On the following morning, however, the following proceedings occurred:

> THE COURT: All right, Sheriff, bring the jury in, please.
>
> [DEFENSE COUNSEL]: Your Honor, may I have just one moment?
>
> THE COURT: Yes.
>
> . . . .

[DEFENSE COUNSEL]: Your Honor, I think it's reasonable based on information that has been presented that the . . . self-defense component in this particular jury instruction would be appropriate, as well, the 308.40 to be elicited here in this particular matter.

Also secondly with that, Your Honor, I do have a case to hand up. I think that would be reflective of that, as well, based on the evidence that has been presented at this time.

THE COURT: Okay. Well, you said yesterday you were satisfied with the instructions as the Court had outlined is going to give.

[DEFENSE COUNSEL]: And Your Honor, *(inaudible)* back where we started in that component, so I wanted to make sure that *(inaudible)* would be appropriate, Your Honor.

THE COURT: And you want to be heard further?

[DEFENSE COUNSEL]: Yes, Your Honor. Simply as we look at this particular matter, the *State v. Jennings*, . . . . This particular matter . . . reflects to a slightly more serious [crime]—it's a murder allegation, but still when it reflects what takes place with a self-defense proposition, that should be provided to the jurors. The piece here, I think, that falls in line with this particular matter is that obviously whatever has been charged, whatever was done, the fact still remains that this particular matter that's in front of the Court today, it is most appropriate that this particular test here for self-defense should be appropriated—is appropriate and should be provided to the jurors.

With that, the actions that were done, the timeliness of the actions, all of those components are supported and would be prudent to make sure that the jurors are aware of this particular action that will be most beneficial, I think, in this matter.

In response, the prosecutor argued that defendant had not given the statutorily-required notice that he intended to rely upon self-defense and that the record evidence did not support the delivery of a self-defense instruction given defendant's failure to testify in his own behalf. At the conclusion of the colloquy initiated by defendant's request for the delivery of a self-defense instruction, the trial court stated that:

> Well, I have to agree with the State. . . . [T]here was no notice given of affirmative defense . . . and because we don't know what was in . . . [d]efendant's mind because he exercised his constitutional right not to testify, we don't know what he was thinking or what he believed. And there's been no other evidence that . . . anything was done in self-defense. The request for a self-defense instruction is denied.
>
> Bring the jury in, please, Sheriff.

At the conclusion of the trial court's jury instructions, the trial court inquired whether there were "any requests for additional instructions or for corrections or any objections to the instructions given to the jury" without drawing any further objections, proposed corrections, or requests for additional instructions from counsel for either the State or defendant.

¶ 17 On 7 March 2018, the jury returned verdicts convicting defendant of assault by strangulation, communicating threats, assault on a female, and interfering with an emergency communication and acquitting defendant of possession of firearm by a felon. At the conclusion of a separate proceeding conducted on the same date, the

jury found that defendant had attained the status of an habitual felon. Based upon these jury verdicts, the trial court consolidated defendant's convictions for judgment and sentenced defendant to a term of sixty-five to ninety months imprisonment. On 12 August 2019, defendant filed a petition seeking the issuance of a writ of certiorari authorizing review of the trial court's judgment, with the Court of Appeals having issued the requested writ of certiorari on 27 August 2019.

**C. Court of Appeals Decision**

¶ 18        In seeking relief from the trial court's judgment before the Court of Appeals, defendant argued that the trial court had erred by rejecting his request that the jury be instructed that it could acquit defendant on the grounds of self-defense given that the record contained evidence that would have allowed the jury to make such a determination. *State v. Hooper*, 279 N.C. App. 451, 2021-NCCOA-500, ¶¶ 12–13. In rejecting defendant's challenge to the trial court's judgment, the Court of Appeals held that "[d]efendant's failure to object [to the planned instructions] during the charge conference or after the instructions were given to the jury, along with his express agreement during the charge conference and after the instructions were given to the jury, constitutes invited error" and "waive[d] any right to appellate review concerning the invited error, *'including plain error review,'* " *id.* ¶ 18 (quoting *State v. Barber*, 147 N.C. App. 69, 74 (2001)), with the Court of Appeals having

reached this result in reliance upon *State v. White*, 349 N.C. 535 (1998), in which we

held that:

> [c]ounsel . . . did not object when given the opportunity either at the charge conference or after the charge had been given. In fact, defense counsel affirmatively approved the instructions during the charge conference. Where a defendant tells the trial court that he has no objection to an instruction, he will not be heard to complain on appeal.

*Hooper*, ¶ 19 (quoting *White*, 349 N.C. at 570). According to the Court of Appeals,

"[t]he tardiness of [d]efendant's purported request followed by his counsel's express

agreement following the jury instructions as given waive[d] appellate review."

*Hooper*, ¶ 19. In addition, the Court of Appeals held that, even if the trial court had

erred by rejecting defendant's request for the delivery of a self-defense instruction,

defendant could not "carry his burden to show the court's refusal of his requested

instruction 'had a probable impact on the jury's [decision to find] that defendant was

guilty,' " *id.* ¶ 20 (quoting *State v. Lawrence*, 365 N.C. 506, 517 (2012)), given that,

"where the evidence against a defendant is overwhelming and uncontroverted[, a]

defendant cannot show that, absent the error, the jury probably would have returned

a different verdict" and given that the evidence against defendant in this case was

both "overwhelming and uncontroverted," *Hooper*, ¶¶ 21, 23 (first alteration in

original) (quoting *State v. Chavez*, 378 N.C. 265, 2021-NCSC-86, ¶ 13). As a result,

the majority at the Court of Appeals held that no error had occurred in the

proceedings leading to the entry of the trial court's judgment.

In a dissenting opinion, Judge Murphy expressed disagreement with his colleagues' conclusion that defendant had invited any error that the trial court might have committed in the course of refusing to instruct the jury concerning the law of self-defense and concluded that the trial court had committed prejudicial error by refusing to instruct the jury that it was entitled to acquit defendant on the basis of self-defense. *Hooper*, ¶¶ 25–26, 50 (Murphy, J., dissenting). In support of his determination that defendant had not invited the trial court's alleged error in refusing to instruct the jury concerning the law of self-defense and that defendant had properly preserved this issue for purposes of appellate review, Judge Murphy pointed to *State v. Rowe*, 231 N.C. App. 462 (2013), which held that "a request for instructions constitutes an objection" as required by N.C. R. App. P. 10(a)(2). *Hooper*, ¶ 35 (Murphy, J., dissenting) (quoting *Rowe*, 231 N.C. App. at 469). As a result of the fact that "[d]efendant [had] specifically requested the trial court to include a jury instruction on [self-defense] and argued that point before the [trial] court," Judge Murphy had "properly preserved this issue for appellate review." *Hooper*, ¶ 37 (Murphy, J., dissenting) (third and fourth alterations in original) (quoting *Rowe*, 231 N.C. App. at 469–70).

In Judge Murphy's view, his colleagues' reliance upon *White* was misplaced given that, in *White*, the defendant's trial counsel had specifically agreed with the language that he later claimed to have been erroneous. *Hooper*, ¶ 38 (Murphy, J.,

dissenting) (citing *White*, 349 N.C. at 568–70). In addition, Judge Murphy noted that the defendant's trial counsel in *White* had failed to object to the challenged trial court instruction both before and after that instruction had been delivered, *Hooper*, ¶ 38 (Murphy, J., dissenting) (citing *White*, 349 N.C. at 568–70), while, in this case, defendant's request for the delivery of a self-defense instruction had been rejected by the trial court, *Hooper*, ¶ 39 (Murphy, J., dissenting).

¶ 21 Finally, Judge Murphy concluded that the record contained sufficient evidence to support the delivery of the requested self-defense instruction and that the trial court's refusal to deliver that instruction constituted error. *Hooper*, ¶ 47 (Murphy, J., dissenting). In Judge Murphy's opinion, the evidence, when taken in the light most favorable to defendant, tended to show that Ms. Thomas had fired a shot before the altercation began and that defendant reasonably believed "that the conduct [was] necessary to defend himself . . . against [Ms. Thomas'] imminent use of unlawful force." *Hooper*, ¶¶ 46–47 (Murphy, J., dissenting) (first alteration in original) (quoting N.C.G.S. § 14-51.3(a) (2019)). Finally, arguing in reliance upon *State v. Gomola*, 257 N.C. App. 816 (2018), Judge Murphy would have held that the trial court's failure to deliver the requested self-defense instruction "deprived the jury of the ability to decide the issue of whether [defendant's] participation in the altercation was lawful," *Hooper*, ¶ 48 (Murphy, J., dissenting) (quoting *Gomola*, 257 N.C. App at 823), a determination which, if made, would "have compelled the jury to return a

verdict of 'not guilty,' especially in light of the jury finding that [d]efendant was not guilty of possession of a firearm," *Hooper*, ¶ 49 (Murphy, J., dissenting). Defendant noted an appeal from the Court of Appeals' decision to this Court based upon Judge Murphy's dissent.

## II.    Analysis

### A. Standard of Review

¶ 22        This Court reviews decisions of the Court of Appeals for the purpose of determining whether they contain any error of law. N.C. R. App. P. 16(a). In deciding whether a defendant is entitled to the delivery of a requested jury instruction, we conduct a de novo review for the purpose of determining "whether each element of the defense is supported by the evidence, when taken in the light most favorable to defendant." *State v. Mercer*, 373 N.C. 459, 462 (2020) (citing *State v. Mash*, 323 N.C. 339, 348 (1988)).

### B. Preservation and Invited Error

¶ 23        In seeking to persuade us that he had properly preserved his challenge to the trial court's refusal to instruct the jury concerning the law of self-defense for purposes of appellate review, defendant begins by noting that N.C. R. App. P. 10(a)(2) provides that:

> [a] party may not make any portion of the jury charge or omission therefrom the basis of an issue presented on appeal unless the party objects thereto before the jury retires to consider its verdict, stating distinctly that to

> which objection is made and the grounds of the objection;
> provided that opportunity was given to the party to make
> the objection out of the hearing of the jury, and, on request
> of any party, out of the presence of the jury.

According to defendant, "a request for an instruction 'constitutes an objection,'" citing *Rowe*, 231 N.C. App. at 469. In addition, defendant directs our attention to Rule 21 of the General Rules of Practice for the Superior and District Courts, which requires that a trial court provide counsel with an opportunity to lodge objections at the jury instruction conference and at the conclusion of the trial court's jury instructions and prior to the beginning of the jury's deliberations, N.C. Gen. R. Prac. Super. & Dist. Ct. 21 ¶¶ 1–2, and authorizes the trial court to recall the jury and correct any of the instructions that it had previously delivered, *id.* ¶ 3. Defendant asserts that, since his trial counsel had requested the delivery of a self-defense instruction "before the trial court charged the jury" and "before the trial court provided the required second opportunity for 'additional instructions or for corrections or any objections to the instructions given'" at the conclusion of its instructions to the jury, defendant had properly preserved his challenge to the trial court's failure to instruct the jury concerning the issue of self-defense for purposes of appellate review.

¶ 24        In addition, defendant asserts that the majority at the Court of Appeals had erred by concluding that he had invited the trial court's allegedly erroneous refusal to instruct the jury concerning the law of self-defense, arguing that the Court of Appeals had "incorrectly relied on this Court's decision in *State v. White* . . . as support

for [its] conclusion." In defendant's view, our decision in *White* is not controlling with respect to this issue given that, in this case, defendant actually requested the delivery of a self-defense instruction, "whereas in *White*, the trial court instructed the jury based on the instruction defense counsel requested and the proposed language they agreed to." *Hooper*, ¶ 39.

On the other hand, the State contends that defendant failed to comply with N.C.G.S. § 15A-905(c)(1), which requires that a defendant:

> [g]ive notice to the State of the intent to offer at trial a defense of . . . self-defense. Notice of defense as described in this subdivision is inadmissible against the defendant. Notice of defense must be given within 20 working days after the date the case is set for trial pursuant to G.S. 7A-49.4, or such other later time as set by the court.

N.C.G.S. § 15A-905(c)(1) (2021). According to the State, defendant's failure to give notice of his intention to assert a claim of self-defense "did not preserve the issue of a self-defense instruction and, in fact, invited error." In addition, the State contends that the Court of Appeals correctly concluded that defendant's failure to object to the trial court's failure to deliver a self-defense instruction during the jury instruction conference or at the conclusion of the instructions that the trial court actually delivered to the jury constituted invited error, with "a defendant who [has] invite[d an] error ha[ving] waived his right to all appellate review concerning the invited error, including plain error review," quoting *Barber*, 147 N.C. App. at 74, and citing *State v. Roseboro*, 344 N.C. 364, 373 (1996). The State further contends that, even if

defendant had not invited the trial court's alleged error, "it is still unpreserved and . . . only plain error review would be available," citing *Lawrence*, 365 N.C. at 512, with plain error review not having been available to defendant in this case "because [he] did not specifically and distinctly contend plain error in the trial court's decision."

¶ 26 A careful review of the record satisfies us that the defendant properly preserved his challenge to the trial court's failure to deliver a self-defense instruction for purposes of appellate review. As has already been noted, the literal language of N.C. R. App. P. 10(a)(2) states that "[a] party may not make any portion of the jury charge or omission therefrom the basis of an issue presented on appeal unless the party objects thereto before the jury retires to consider its verdict." The record in this case clearly reflects that defendant requested the trial court to instruct the jury concerning the issue of whether he was entitled to be acquitted on the grounds of self-defense prior to the point in time at which the trial court instructed the jury. In addition, this Court clearly held almost four decades ago in *Wall v. Stout*, 310 N.C. 184 (1984), that the purpose sought to be achieved by N.C. R. App. P. 10(a)(2)[1] "is met when a request to alter an instruction has been submitted and the trial judge has considered and refused the request," with the trial court's "refusal at the charge

---

[1] *Wall* refers to this rule as N.C. R. App. P. 10(b)(2) throughout its text. *See generally Wall*, 310 N.C. 184. However, as a result of an amendment that became effective 1 October 2009, the provisions of former N.C. R. App. P. 19(b)(2) were transferred to N.C. R. App. P. 10(a)(2). As a result, decisions construing former N.C. R. App. P. 10(b)(2) are equally applicable to current N.C. R. App. P. 10(a)(2).

conference to instruct in accordance with [a party's] proposals represent[ing] the judge's final decision" and with "further objections [being] not only useless but wasteful of the court's time."[2]  *Id.* at 189; *see also State v. Smith*, 311 N.C. 287, 290 (1984) (stating that the defendant was not required "to repeat his objection to the jury instructions, after the fact, in order to properly preserve his exception for appellate review"); *Rowe*, 231 N.C. App. at 469–70 (holding that, given that the defendant had "specifically requested the trial court to include a jury instruction on simple assault and argued that point before the court, he had properly preserved the instructional issue in question for purposes of appellate review).  As a result, given that defendant requested the trial court to instruct the jury concerning the issue of self-defense "before the jury retire[d] to consider its verdict," N.C. R. App. P. 10(a)(2), and given that the trial court expressly denied defendant's request for the delivery of the requested self-defense instruction,[3] defendant's challenge to the trial court's allegedly

---

[2] As was the case in *Wall*, nothing in the record before us in this case provides any basis for a conclusion that defendant's trial counsel had a change of heart concerning the appropriateness of the requested self-defense instruction.  Instead, the trial court in this case heard and rejected defendant's request for an additional instruction, making what happened in this case indistinguishable from the series of events that this Court held in *Wall* to be sufficient to preserve the rejection of a party's request for instructions for purposes of appellate review.

[3] The fact that defendant requested the delivery of a self-defense instruction makes this case fundamentally different from *White*, in which the trial court agreed to give a peremptory instruction with respect to non-statutory mitigating circumstances at defendant's capital sentencing hearing, defendant agreed to the language that the trial court proposed and "neither suggested nor provided any other language either orally or in writing," "the trial court instructed the jury exactly as it had indicated" that it would, and defendant "did not object" after the conclusion of the trial court's instructions.  *White*, 349 N.C. at 569.

erroneous refusal to deliver a self-defense instruction to the jury was properly preserved for purposes of appellate review even though defendant did not raise the self-defense issue at the jury instruction conference, expressed initial agreement with the trial court's proposed instructions, and did not lodge any sort of objection to the instructions that the trial court actually gave at the conclusion of the trial court's final charge to the jury.[4]

The fact that defendant failed to provide notice of his intent to rely upon self-defense in advance of trial as required by N.C.G.S. § 15A-905(c)(1) does not call for a different result with respect to this issue. Subsection § 15A-905(c)(1) appears in the statutory provision setting out a criminal defendant's obligation to make disclosure to the State during the discovery process. A party's failure to comply with his, her, or its discovery-related obligations is addressed in N.C.G.S. § 15A-910, which sets out a number of sanctions that can be imposed in the event that a party fails to provide discovery in accordance with applicable law, including the entry of "other appropriate

---

In other words, the trial court in *White* had no basis for believing that defendant objected to the manner in which it had instructed the jury concerning non-statutory mitigating circumstances while the trial court in this case was presented with and rejected a request for the delivery of a self-defense instruction.

[4] Our determination that defendant properly preserved his challenge to the trial court's refusal to instruct the jury concerning the law of self-defense suffices to dispose of the State's argument that defendant invited the trial court's alleged error. As N.C.G.S. § 15A-1443(c) provides, "[a] defendant is not prejudiced by the granting of relief which he has sought or by error resulting from his own conduct." N.C.G.S. § 15A-1443(c) (2021). As a result, a finding of invited error must hinge upon a party's affirmative request for a specific action upon the part of the trial court rather than a mere failure to lodge an objection to an action that the trial court actually took.

orders." N.C.G.S. § 15A-910(a)(4) (2021). However, before "finding any sanctions appropriate, the court shall consider both the materiality of the subject matter and the totality of the circumstances surrounding an alleged failure to comply with [the applicable discovery-related statutes] or an order issued pursuant to" those statutes, N.C.G.S. § 15A-910(b), and, in the event that it deems the imposition of sanctions appropriate, "it must make specific findings justifying the imposed sanction," N.C.G.S. § 15A-910(d). Assuming, without in any way deciding, that a trial court is authorized to refrain from instructing the jury concerning an affirmative defense of which the defendant was required to provide notice pursuant to N.C.G.S. § 15A-905(c)(1) as a discovery sanction on the basis that such a determination constitutes an "other appropriate order" authorized by N.C.G.S. § 15A-910(a)(4), the record contains no indication that the trial court considered the totality of the surrounding circumstances in reaching that decision as required by N.C.G.S. § 15A-910(b) or made the required "findings justifying the imposed sanction," N.C.G.S. § 15A-910(d).[5] Instead, the trial court appears to have rejected defendant's request for the delivery

---

[5] The trial court's ruling upon defendant's request for instructions consisted of nothing more than a notation that no notice had been given, that "we don't know what was in the [d]efendant's mind because he exercised his constitutional right not to testify," that defendant's failure to testify precluded any knowledge of "what he was thinking or what he believed," and that "there's been no other evidence that . . . anything was done in self-defense." Although the trial court did ask a number of questions during the colloquy that it conducted with counsel for the State and defendant, none of these questions was mentioned in the trial court's statement of the basis for its decision, which clearly focuses upon the merits of defendant's request for a self-defense instruction and does not reflect the weighing process that is contemplated by N.C.G.S. § 15A-910(b) and (d).

of the requested self-defense instruction based upon a determination that the record evidence, when taken in the light most favorable to defendant, would not have permitted a jury to acquit defendant on the grounds of self-defense. As a result, given that the trial court's decision to reject defendant's request for a self-defense instruction does not appear to have resulted from the imposition of a discovery sanction and given that the trial court did not take the procedural steps necessary to justify the imposition of such a sanction upon defendant in this case, we hold that defendant is not precluded from advancing his challenge to the trial court's refusal to instruct the jury concerning the law of self-defense based upon defendant's noncompliance with N.C.G.S. § 15A-905(c)(1) and will proceed to address the merits of the trial court's decision to refrain from delivering the requested self-defense instruction.

## C. Sufficiency of the Evidence to Support a Self-Defense Instruction

¶ 28    In seeking to persuade us that the record developed before the trial court in this case supports the delivery of the requested self-defense instruction, defendant asserts that the record contains conflicting evidence concerning the nature of the events that occurred in the hotel room on the night of the alleged assault. Among other things, defendant notes that Ms. Donnell testified that Ms. Thomas had told her that "a shot was fired, a scuffle happened, and then a fire, . . . and then he looked down at his leg." In addition, defendant points out that Ms. Machoca testified that

Ms. Thomas had acquired a gun prior to her visit to defendant's hotel room and that the jury had acquitted defendant of being a felon in possession of a firearm. Defendant asserts that, even though "there may be contradictory evidence from the State or discrepancies in the defendant's evidence, . . . the trial court must charge the jury on self-defense where there is evidence that the defendant acted in self-defense," citing *State v. Coley*, 375 N.C. 156, 163 (2020), with it being "within the purview of the jury to resolve any conflicts in the evidence presented at trial and to render verdicts upon being properly instructed by the trial court," *Coley*, 375 N.C. at 163.

¶ 29 The State, on the other hand, appears to contend that the record precluded the delivery of a self-defense instruction in this case given that the undisputed evidence tended to show that defendant was the initial aggressor or that this fact precluded a finding of prejudicial error. In the State's view, the record provides ample "reason for the victim to need to defend herself against [d]efendant," including the existence of evidence tending to show that defendant made unwelcome visits to the home of Ms. Thomas' mother "almost every day" that were accompanied by "repeated verbal threats," evidence tending to show that defendant's mother had to serve as an intermediary between defendant and Ms. Thomas, and evidence tending to show that Ms. Thomas felt it necessary to bring Mr. Reaves to the funeral of defendant's great aunt funeral to assist in her interactions with defendant. Aside from the presence of evidence "indicative of an abusive relationship with [d]efendant," the State notes that

the record contains evidence concerning defendant's history of inflicting physical abuse upon his romantic partners. In other words, the State contends that defendant failed to "present[ ] competent and sufficient evidence to warrant the self-defense instruction," quoting *Coley*, 375 N.C. at 162, and that the delivery of a self-defense instruction would not have changed the ultimate outcome at defendant's trial given the strength of the State's evidence and the fact that the wound that defendant sustained was not inflicted with a firearm like the one that Ms. Thomas obtained prior to 4 March 2017. As a result, since the evidence against defendant was both "overwhelming and uncontroverted," *Hooper*, ¶ 21 (quoting *Chavez*, ¶ 13), the State contends that any error that the trial court might have committed in refusing defendant's request for the delivery of a self-defense instruction could not have prejudiced defendant's chances for a more favorable outcome at trial.

¶ 30     According to N.C.G.S. § 14-51.3(a),

> [a] person is justified in using force, except deadly force,
> against another when and to the extent that the person
> reasonably believes that the conduct is necessary to defend
> himself or herself or another against the other's imminent
> use of unlawful force.

N.C.G.S. § 14-51.3(a) (2021). As the relevant statutory language indicates, a defendant is not entitled to rely upon self-defense unless he or she (1) reasonably believes (2) that his or her use of force (3) is necessary (4) to defend himself or herself against the imminent use (5) of unlawful force by another. As this Court has

previously stated, "[t]he reasonableness of a [defendant's] belief is to be determined by the jury from the facts and circumstances as they appeared to him at the time" he used force against his adversary. *State v. Gladden*, 279 N.C. 566, 572 (1971).

A careful review of the record persuades us that the record contains no evidence tending to show that defendant assaulted Ms. Thomas for the purpose of defending himself from the use of unlawful force on the part of Ms. Thomas. Accepting, as we are required to do, the truthfulness of Ms. Donnell's recitation of the statements that Ms. Thomas made to her and the truthfulness of Officer Joyce's recitation of the statements that defendant made to him, the record contains nothing more than an assertion that an initial (and possibly a second) gunshot occurred before defendant assaulted Ms. Thomas.[6]  In order for defendant to have been entitled to

---

[6] A careful study of the record reveals no evidence that any of the gunshots described in the testimony of the various witnesses resulted from any sort of unprovoked intentional act of the type that would be necessary to support a valid claim of self-defense.  For example, defendant told Officer Joyce that, after Ms. Thomas pulled out the firearm, he advanced upon her in order to take the gun away, at which point she shot him during the ensuing struggle.  As a result, in this version of the relevant events, Ms. Thomas did nothing more than display a firearm before defendant attacked her, with there being no evidence that Ms. Thomas pulled out the gun before the argument between the two of them began or any evidence that Ms. Thomas made any menacing gesture or uttered any threats before defendant's assault began.  Similarly, Ms. Donnell testified that Ms. Thomas stated that she had pointed the gun at defendant, that she asked defendant if she was going to kill her, that a shot had been fired, and that another shot was fired during the scuffle.  Aside from the fact that nothing in Ms. Donnell's description of Ms. Thomas' statements indicates that either gunshot had been fired intentionally, Ms. Donnell's testimony reflects that, at the time that Ms. Thomas pointed the gun at defendant, she asked defendant if he was going to kill her, a set of circumstances that is inconsistent with the sort of attack upon the defendant or one of defendant's relatives or friends that occurred in cases like *State v. Greenfield*, 375 N.C. 434, 442 (2020); *State v. Lee*, 370 N.C. 671, 672 (2018); and *State v. Moore,* 363 N.C. 793, 797–98 (2010).  As a result, we

have used force against Ms. Thomas in self-defense, the record would have had to have contained evidence that the force that defendant used against Ms. Thomas stemmed from an attempt to protect himself against an unlawful use of force on the part of Ms. Thomas. However, even if the first gunshot occurred before defendant assaulted Ms. Thomas, the record contains no indication that defendant assaulted for the purpose of defending himself from any unlawfully assaultive conduct on the part of Ms. Thomas.

Although Ms. Donnell described Ms. Thomas as having stated that she and defendant were standing in front of one another; that Ms. Thomas "had [the gun] pointed at" defendant and asked defendant if he was going to kill her; that defendant had requested that Ms. Thomas give him the gun; that each of them repeated the statements that they had just made; and that "a fire, . . . a bullet happened again, and [defendant] looked down at his leg," causing her to realize that she had "shot him in the leg" and although Officer Joyce testified that defendant claimed to have attempted to take a gun away from Ms. Thomas, none of this evidence tended to show that defendant assaulted Ms. Thomas for the purpose of protecting himself from any unlawful use of force on the part of Ms. Thomas. Put another way, the record does not contain any evidence tending to show that Ms. Thomas threatened defendant or

---

do not believe that the evidence, even when taken in the light most favorable to defendant, supports an inference that defendant only attacked Ms. Thomas after she intentionally fired a weapon at him.

that Ms. Thomas pointed a gun toward defendant in the absence of any provocation on his part prior to his assault upon her. On the contrary, the statements that Ms. Donnell attributed to Ms. Thomas reflect a fear on the part of Ms. Thomas that defendant would kill her. In the absence of any affirmative evidence tending to show that defendant assaulted Ms. Thomas based upon a perceived need to defend himself against unlawful attack, the trial court was not required to instruct the jury concerning the issue of self-defense. As a result, the trial court did not err by refusing to instruct the jury that it was entitled to acquit defendant of assault on the grounds of self-defense.

### III.    Conclusion

Thus, for the reasons set forth above, we hold that defendant properly preserved his challenge to the trial court's refusal to instruct the jury concerning the law of self-defense for purposes of appellate review and that the trial court did not err by refusing to deliver defendant's requested self-defense instruction. As a result, the Court of Appeals' decision is modified and affirmed.

MODIFIED AND AFFIRMED.

Chief Justice NEWBY concurring in part and dissenting in part.

On the merits, this case asks whether the trial court erred when it denied defendant's request for a jury instruction on self-defense. Were this issue preserved, I agree with the majority that the trial court did not err. Because defendant failed to preserve this issue for appellate review, however, this Court should not reach the merits. Further, defendant failed to provide timely notice to the State of his intent to offer a defense of self-defense as required by N.C.G.S. § 15A-905(c). The trial court, therefore, appropriately exercised its discretion under N.C.G.S. § 15A-910(a) in denying defendant's requested instruction. Accordingly, I respectfully concur in part and dissent in part.

"A party may not make any portion of the jury charge or omission therefrom the basis of an issue presented on appeal unless the party objects thereto before the jury retires to consider its verdict, stating distinctly that to which objection is made and the grounds of the objection . . . ." N.C. R. App. P. 10(a)(2). A trial court must give the parties or their attorneys an opportunity to object to the jury instructions (1) at the charge conference, and (2) "[a]t the conclusion of the charge and before the jury begins its deliberations." Gen. R. Prac. Super. & Dist. Cts. 21. This Court has held that "[w]here a defendant tells the trial court that he has no objection to an instruction," both at the charge conference and after the trial court charges the jury, "he will not be heard to complain on appeal." *State v. White*, 349 N.C. 535, 570, 508

S.E.2d 253, 275 (1998).

¶ 36          Relying on the decision in *Wall v. Stout*, the majority contends that the objection requirement in Rule 10(a)(2) is achieved whenever "a request to alter an instruction has been submitted and the trial judge has considered and refused the request." *Wall v. Stout*, 310 N.C. 184, 189, 311 S.E.2d 571, 574 (1984). This conclusion, however, ignores the possibility that a party's other conduct, including the timing of any request, could render a mere request inadequate to preserve an objection.

¶ 37          In *Wall*, the trial court held a charge conference after the conclusion of all evidence and described the pattern jury instructions it intended to use. *Id.* at 188, 311 S.E.2d at 574. At that time, the plaintiffs' counsel objected and asked the trial court to remove various portions of the proposed instructions. *Id.* The trial court overruled the request and instructed the jury as described at the charge conference. *Id.* The plaintiffs' counsel made no additional objections to the instructions after the trial court's jury charge concluded. *Id.* After the jury returned a verdict for defendant, the plaintiffs appealed seeking a new trial based on the jury instructions used by the trial court. *See id.* at 190, 311 S.E.2d at 575. Before turning to the merits of the plaintiffs' argument, this Court considered whether the plaintiffs properly preserved this issue for appellate review. *See id.* at 187−89, 311 S.E.2d at 574−75.

¶ 38          This Court noted that "[i]n *most* instances" the purpose of Rule 10(a)(2) is "met

when a request to alter an instruction has been submitted and the trial judge has considered and refused the request" because it will usually be "obvious that further objection at the close of instructions would be unavailing." *Id.* at 189, 311 S.E.2d at 574 (emphasis added). This reasoning held true in *Wall* because

> [o]n the basis of the record . . . it appear[ed] plain that the trial judge's refusal at the charge conference to instruct in accordance with plaintiffs' proposals represented the judge's final decision and further objections would have been not only useless but wasteful of the court's time. As such, we hold that plaintiffs' failure to object following the giving of the jury instructions does not foreclose review by this Court of plaintiffs' exceptions . . . .

*Id.* at 189, 311 S.E.2d at 575. The plaintiffs in *Wall* objected to the trial court's proposed instructions at the first opportunity required by Rule 21 of the General Rules of Practice—the charge conference—and thereafter did nothing to indicate they had changed their position. Thus, this Court concluded, based on those facts, that no further action was required to preserve plaintiffs' objection. *Id.*

¶ 39 Here, unlike in *Wall*, defendant's conduct rendered his singular request for a self-defense instruction insufficient to preserve the issue for appellate review. First, at the Rule 21 charge conference, defendant affirmatively agreed to the trial court's proposed jury charge that did not include a self-defense instruction. The following morning just before the trial court instructed the jury, defendant orally requested that the trial court add a self-defense instruction to the jury charge. At that point, the trial judge asked both defendant and the State for argument on whether it should

grant defendant's request and explained its reasoning for denying the request. Defendant did not note an objection to the trial court's denial, and the trial court proceeded to charge the jury without the requested self-defense instruction. Finally, once the jury charge was complete, defendant told the trial court that he had no "requests for additional instructions or for corrections or . . . objections to the instructions given to the jury."

¶ 40      Based on this sequence of events, it was not "obvious" at the conclusion of the jury charge whether defendant objected or assented to the trial court's instructions. *Wall*, 310 N.C. at 189, 311 S.E.2d at 574. It is entirely possible that the reason defendant did not object to the trial court's denial of his request and subsequently agreed with the trial court's jury instructions is because defendant changed his mind upon hearing the trial court's reasoning for denying his request and agreed that a self-defense instruction was improper. Accordingly, *Wall* is distinguishable and should not control the outcome of this case. Instead, this case is controlled by *White* where we said that "defense counsel . . . did not object when given the opportunity either at the charge conference or after the charge had been given," so any issue regarding a requested instruction is not preserved. *See White*, 349 N.C. at 570, 508 S.E.2d at 275. Thus, defendant's request for a self-defense instruction was, without

more, insufficient to preserve the issue for appellate review.[1]

Additionally, the majority concludes that the trial court could not have denied defendant's requested instruction under the notice requirement of N.C.G.S. § 15A-905(c) because it failed to first consider the "totality of the circumstances," as required by N.C.G.S. § 15A-910(b). The record does not support this conclusion.

During discovery, a criminal defendant must "[g]ive notice to the State of the intent to offer at trial a defense of . . . self-defense." N.C.G.S. § 15A-905(c)(1) (2021). If a defendant fails to satisfy this or other discovery requirements, the trial court may: "(1) [o]rder the party to permit the discovery or inspection, or (2) [g]rant a continuance or recess, or (3) [p]rohibit the party from introducing evidence not disclosed, or (3a) [d]eclare a mistrial, or (3b) [d]ismiss the charge, with or without prejudice, or (4) [e]nter other appropriate orders." N.C.G.S. § 15A-910(a) (2021). Before ordering any remedy under subsection (a), the trial court must "consider both the materiality of the subject matter and the totality of the circumstances surrounding [the] alleged failure to comply with" the notice requirement and "make specific findings justifying the imposed sanction." N.C.G.S. § 15A-910(b), (d) (2021).

However, "[t]he choice of which sanction to apply, if any, rests in the sound discretion of the trial court." *State v. Gladden*, 315 N.C. 398, 412, 340 S.E.2d 673, 682

---

[1] Because defendant failed to preserve his objection to the trial court's jury instructions under Rule 10(a)(2) of the Rules of Appellate Procedure, it is unnecessary to address whether defendant's conduct constituted invited error.

(1986); *see also State v. Dukes*, 305 N.C. 387, 390, 289 S.E.2d 561, 563 (1982) ("This statute . . . is permissive and not mandatory, and the remedy for failure to provide discovery rests within the trial court's discretion."). Accordingly, the trial court's selected remedy under N.C.G.S. § 15A-910(a) "is not reviewable absent a showing of an abuse of that discretion." *Gladden*, 315 N.C. at 412, 340 S.E.2d at 682. We reverse a trial court's decision for abuse of discretion "only upon a showing that its ruling [is] so arbitrary that it could not have been the result of a reasoned decision." *Id.* (citing *State v. Hayes*, 314 N.C. 460, 471, 334 S.E.2d 741, 747 (1985)).

¶ 44        Both parties agree that defendant failed to provide the required notice of his intent to offer a defense of self-defense. As such, the trial court acted within its statutory discretion to enter any "appropriate order" under N.C.G.S. § 15A-910(a) when it denied defendant's request for a self-defense instruction. Further, the trial court complied with the requirements of N.C.G.S. § 15A-910(b) and (d) before denying defendant's request. Once defendant requested a self-defense instruction, the trial court asked defendant and the State for argument on whether it should grant the request and then provided its basis for denying the request on the record.

¶ 45        Specifically, the trial court considered the fact that no notice was given to the State as required by N.C.G.S. § 15A-905(c), the State objected to the inclusion of the instruction, defendant agreed to the proposed instructions the previous day, the evidence at trial did not support the inclusion of a self-defense instruction, and the

jury could not properly assess what defendant believed at the time of the incident because defendant chose not to testify. *See* N.C.P.I.−Crim. 308.40 (2020) (providing that a standard self-defense instruction includes consideration of what the defendant believed at the time he or she acted with force). The trial court recorded these findings orally on the record.

¶ 46 These actions satisfy the analysis required by N.C.G.S. § 15A-910(b) and (d). Since the trial court weighed various factors related to the parties' conduct and the evidence at trial, it did not abuse its discretion under N.C.G.S. § 15A-910(a) in denying defendant's request for a self-defense instruction.

¶ 47 Nonetheless, were the Court to reach the question of whether the trial court erred in refusing to give a self-defense instruction, I agree with the majority that the trial court did not err. Accordingly, I concur in part and dissent in part.

Justices BERGER and BARRINGER join in this concurring in part and dissenting in part opinion.

Justice EARLS concurring in part and dissenting in part.

¶ 48 "This Court has consistently held that 'where competent evidence of self-defense is presented at trial, the defendant is entitled to an instruction on this defense, as it is a substantial and essential feature of the case, and the trial judge must give the instruction even absent any specific request by the defendant.' " *State v. Coley*, 375 N.C. 156, 159 (2020) (quoting *State v. Morgan*, 315 N.C. 626, 643 (1986)). "In determining whether a defendant has presented competent evidence sufficient to support a self-defense instruction, we take the evidence as true and consider it in the light most favorable to the defendant." *Coley*, 375 N.C. at 159. Applying this well-established standard to the facts of this case, it was error for the trial court to fail to instruct the jury on self-defense. To hold otherwise, the majority advances an astounding proposition: Even if, as Mr. Hooper's evidence suggests, Ashley Thomas had grabbed a gun, pointed it at him, fired it, and he then tried to wrestle the gun away from her, there is nevertheless no evidence "tending to show that defendant assaulted Ms. Thomas based upon a perceived need to defend himself against unlawful attack." The notion that the jury could not reasonably infer that Mr. Hooper feared for his life after being shot in his hotel room, a place he had a legal right to be, goes against common sense and well-established precedent. Therefore, I concur with the majority that this issue was preserved for review on appeal, but I dissent from the conclusion that Mr. Hooper's evidence in this case did not justify the submission

of a self-defense instruction to the jury. The jury was free to believe the State's witnesses over Mr. Hooper's, but they needed to know the law of self-defense to properly assess his guilt.

**A. Defendant's Evidence**

¶ 49 Though Mr. Hooper did not testify at his trial, his statement regarding the incident, made just hours afterwards, was in evidence. He told law enforcement that Ms. Thomas, the alleged victim, entered his hotel room with their son on 4 March 2017. Ms. Thomas and Mr. Hooper had a conversation that turned into an argument, at which point Ms. Thomas pulled out a gun that she had received from a friend. Mr. Hooper explained that he approached her to take the gun away from her, she fired a shot, a struggle ensued, and she shot the gun a second time, this time hitting Mr. Hooper in the leg.

¶ 50 Mr. Hooper's mother, Felicia Donnell, corroborated this version of events. She testified that Ms. Thomas called her after the incident took place to inform Ms. Donnell that she shot Ms. Donnell's son. According to Ms. Donnell, Ms. Thomas explained that she pointed a gun at Mr. Hooper and fired a shot after Mr. Hooper demanded that she give him the weapon. This shot did not hit Mr. Hooper. Ms. Thomas told Ms. Donnell that a scuffle then ensued during which she fired a second shot. Ms. Thomas said that this second shot hit Mr. Hooper's leg. Ms. Donnell testified that her understanding was that there was no physical altercation between Ms.

Thomas and Mr. Hooper until after the first shot was fired. She further testified that the assault took place during the interval between shots, when Mr. Hooper choked and punched Ms. Thomas.

¶ 51   Another one of Mr. Hooper's witnesses and the mother of one of his sons—Marcelina Machoca—testified that she communicated with Ms. Thomas before the incident took place. Ms. Machoca explained that Ms. Thomas was upset that Mr. Hooper had spent time with Ms. Machoca because Mr. Hooper and Ms. Thomas were having conversations about getting back together. According to Ms. Machoca, during this conversation, Ms. Thomas told her that Ms. Thomas had a gun and would "have no problem" using it against Mr. Hooper.

## B. Requirement of Self-Defense Instruction

¶ 52   In the light most favorable to Mr. Hooper, this evidence shows that, before the incident occurred, Ms. Thomas acquired a gun that she felt prepared to use on Mr. Hooper. On the day of the incident, Ms. Thomas pointed a gun at him, which she then fired. Mr. Hooper attempted to disarm her to protect himself, but she ultimately shot him in the leg. This evidence, supported by two witnesses, as well as by Mr. Hooper's own statement about what happened, which he made to a police officer while he was in the hospital receiving treatment for his injury, is sufficient to warrant a jury instruction on self-defense.

¶ 53   The majority recognizes that Mr. Hooper introduced this evidence but

nonetheless concludes that there is "no evidence" that Mr. Hooper assaulted Ms. Thomas in self-defense. The majority explains that "even if the first gunshot occurred before defendant assaulted Ms. Thomas, the record contains no indication that defendant assaulted for the purpose of defending himself from any unlawfully assaultive conduct on the part of Ms. Thomas." This is a remarkably untenable conclusion. In fact, and very much to the contrary, Mr. Hooper's evidence tended to show that his disgruntled ex-girlfriend arrived at his hotel room, at which point an argument ensued. The evidence suggests that, during this argument, Ms. Thomas pointed a gun at him and fired before he used any force against her. A predictable response to such conduct is to use physical force as a means of self-protection. This response was made even more obviously necessary by the fact that Ms. Thomas then fired the gun a second time, hitting Mr. Hooper in his leg.

¶ 54    Thus, taking Mr. Hooper's version of events in the light most favorable to him, a reasonable jury could conclude that, after Ms. Thomas pointed the gun at him and fired once, (1) Mr. Hooper reasonably believed his conduct was necessary to defend himself (2) from Ms. Thomas's imminent use of unlawful force.[1] *See* N.C.G.S. § 14-51.3(a) (2021). The majority's conclusion that "none of this evidence tended to show

---

[1] The majority repeatedly interprets the evidence in the light most favorable to the State, which is, of course, improper. For example, the majority's "careful study of the record" suggests that Mr. Hooper was not trying to defend himself when he tried to take the gun away from Ms. Thomas but instead was unlawfully assaulting her. That inference implicitly favors the State when the Court should be making an inference in favor of Mr. Hooper.

that defendant assaulted Ms. Thomas for the purpose of protecting himself from any unlawful use of force" defies logic, common sense, and countless cases that have examined whether a person who is being shot at or faces the imminent possibility of being shot has the right to defend themselves. *See, e.g., State v. Greenfield*, 375 N.C. 434, 436–37, 442 (2020) (holding that the evidence was sufficient to entitle defendant to a self-defense jury instruction where defendant's evidence was that he did not point his gun at anyone until the surviving victim emerged from the bedroom pointing a gun at him); *State v. Lee*, 370 N.C. 671, 672, 676–77 (2018) (holding that a self-defense instruction was warranted where defendant asserted that he fired the fatal shot only after the victim turned the gun on him and defendant introduced evidence supporting his version of events); *State v. Moore*, 363 N.C. 793, 794, 798 (2010) (holding that defendant was entitled to a jury instruction on self-defense, despite conflict between defendant's evidence and the State's evidence, where victim of shooting was unarmed but evidence presented at trial, when viewed in the light most favorable to defendant, suggested the victim could have had a gun); *see also State v. Irabor*, 262 N.C. App. 490, 494–95 (2018) (holding that defendant was entitled to a jury instruction on self-defense, despite the State's contention that the evidence was conflicting, where victim of shooting did not have a gun but evidence presented at trial, when viewed in the light most favorable to defendant, suggested the victim could have been armed); *State v. Johnson*, 184 N.C. 637, 645 (1922) (holding that the

defendant was entitled to a jury instruction on self-defense where there was evidence that defendant did not stab the victim with a knife until the victim assaulted him).

¶ 55        The majority cites Mr. Hooper's "history of inflicting physical abuse upon his romantic partners" as part of the State's evidence that a self-defense instruction was unwarranted under the circumstances. But the evidence introduced at trial indicates that this "history" is much more limited than the majority suggests. First, Ms. Machoca testified on cross-examination that several years earlier, Mr. Hooper "pulled out a gun on" her brother on one occasion and assaulted her on another. Ms. Machoca was careful to emphasize that the incidents took place years ago, and she provided no other context or details about what happened. Additionally, Ms. Donnell testified on cross-examination that Ms. Thomas and Mr. Hooper's "relationship is like nitro and glycerin." However evocative the characterization, and regardless of how extensive or limited this history is, such evidence is irrelevant to the question of whether Mr. Hooper's evidence merits a self-defense instruction. This point highlights a larger, key principle in determining whether a self-defense instruction is proper: The State's evidence, however convincing, cannot negate evidence presented by a defendant for the purpose of determining whether a jury should be instructed on self-defense. *See, e.g., State v. Greenfield*, 375 N.C. at 440 (quoting *State v. Mash*, 323 N.C. 39, 348 (1988)) (" 'To resolve whether a defendant is entitled to a requested instruction, we review de novo whether each element of the defense is

supported by the evidence, when taken in the light most favorable to defendant.' ").

¶ 56        The State could have offered hours upon hours of testimony demonstrating that Mr. Hooper was the aggressor and was therefore not justified in assaulting Ms. Thomas. Indeed, the State may have offered significant evidence to rebut every element of the self-defense instruction. The question for the trial court, however, was whether Mr. Hooper offered sufficient competent evidence of each element of self-defense such that a reasonable jury could, if they believed that evidence, conclude that he acted in self-defense in assaulting Ms. Thomas. *See, e.g., Moore*, 363 N.C. at 796 ("[I]f the defendant's evidence, taken as true, is sufficient to support an instruction for self-defense, it must be given even though the State's evidence is contradictory.")*; State v. Webster*, 324 N.C. 385, 391 (1989) ("In determining whether there was any evidence of self-defense presented, the evidence must be interpreted in the light most favorable to defendant." (citing *State v. Gappins*, 320 N.C. 64, 71 (1987))). If believed, Mr. Hooper's evidence here was sufficient to show that, unarmed, he acted in self-defense when he assaulted Ms. Thomas after Ms. Thomas pointed and shot a gun at him.

¶ 57        Surely, if the roles were reversed and Ms. Thomas were on trial for assault, there would be no hesitation to give the jury an instruction on self-defense. In other words, would this Court hold that there is no evidence that Ms. Thomas was trying to defend herself if 1) Ms. Thomas had been shot in the leg while Mr. Hooper

sustained a bite mark, a swollen jaw, red marks on his neck, and broken fingernails, and 2) a witness for Ms. Thomas testified that, very shortly after the incident, Mr. Hooper told Ms. Thomas's mother that he fired the gun once and only then did Ms. Thomas try to choke him before he fired a second time? The answer to this question, I believe, is a resounding no. Recognizing this likely discrepancy in result, it is important to remember that both men and woman may be victims of intimate partner violence.[2] Assuming that Ms. Thomas must have been the victim of an assault in this incident without properly crediting Mr. Hooper's version of events is both counter to the law of self-defense and runs the risk of ignoring this important reality.

¶ 58     Perhaps it is true that on 4 March 2017 Ms. Thomas was the victim of an unprovoked assault by Mr. Hooper in his hotel room in front of their young son. But Mr. Hooper produced evidence showing the opposite to be true, namely that he was the victim and that Ms. Thomas, the aggressor, was angry about his behavior with another woman and entered his room looking for a fight. It is neither this Court's nor

---

[2] There is debate among scholars over the relative extent to which women and men are victims of domestic violence. *Compare* Amanda J. Schmesser, *Real Men May Not Cry, but They are Victims of Domestic Violence: Bias in the Application of Domestic Violence Laws*, 58 Syracuse L. Rev. 171, 186–89 (2007) (reviewing studies indicating gender symmetry, that is, just as many men as women are victims of domestic violence), *with* Michael S. Kimmel, *'Gender Symmetry' in Domestic Violence: A Substantive and Methodological Research Review*, 8 Violence Against Women 1332 (2002) (reviewing research including over 100 studies showing gender symmetry and cautioning that different conclusions are warranted when more nuanced factors are considered such as severity of injury). There is no need to resolve this debate for the purposes of the point being made here; all agree that intimate partner violence must be taken seriously and that all victims, regardless of gender, deserve equal access to laws that serve to protect and defend them.

the trial court's duty to determine whose evidence was more convincing. Rather, the guiding principle courts must follow is that "although there may be contradictory evidence from the State or discrepancies in the defendant's evidence, . . . the trial court must charge the jury on self-defense where there is evidence that the defendant acted in self-defense." *Coley*, 375 N.C. at 163. In light of the evidence produced by both parties, it was the jury's duty to determine in whose favor it weighed after having been properly instructed on the law of self-defense in North Carolina.

¶ 59         Having concluded that a jury instruction on self-defense was warranted, I would also hold that it was prejudicial error for the trial court to fail to give that instruction, as there is a reasonable possibility that had the instruction been given, a different result would have been reached at trial. *See* N.C.G.S. § 15A-1443(a) (2021); *State v. Bass*, 371 N.C. 535, 542 (2018) (announcing that when self-defense instruction omitted relevant language, "[d]efendant is entitled to a trial with complete and accurate jury instructions"). I would therefore reverse the decision of the Court of Appeals, vacate the trial court's judgment, and remand this case to the trial court for a new trial.